1   ALLEN SAWYER
    CA State Bar No.: 173565
2   ROSENFELD & SAWYER
3   4578 Feather River Drive, Ste. D
    Stockton, CA 95219
4   (209) 645-0556

5   CHARLES L. HASTINGS
6   CA State Bar No.: 88599
    NATALI A. RON
7   CA State Bar No.: 302927
8   LAW OFFICE OF HASTINGS & RON
    4568 Feather River Dr., Ste. A
9   Stockton, CA 95219
    (209) 476-1010
10

11              IN THE UNITED STATES DISTRICT COURT

12          FOR THE EASTERN DISTRICT OF CALIFORNIA

13

14  CHRISTINA FUGAZI;                    CIVIL ACTION CASE NO
    ALEX GONZALEZ;
15  ANNETTE ZIMMER;                      COMPLAINT FOR INJUNCTIVE AND
    FRANCISCO MACIAS;                    DECLARATORY RELIEF AND FOR
16  JAMAR C. BERRY;                      WRIT OF MANDATE
    JO A. LAING;
17  BENJAMIN R. HERRERA;                 Section 2 of the Voting Rights Act of 1965
    DIVINE JANE LEANOS;                  (52 U.S.C. § 10301); Section 8 of the
18  ELIZABETH LAWRENCE WHITE;            National Voter Registration Act of 1993 (52
    MARC LAWRENCE WHITE;                 U.S.C. § 20507); Voting Provisions of the
19  KALANI MARSHALL BLACK;               Americans with Disabilities Act (codified at
    TARKDEEP SINGH;                      42 U.S.C. § 12101 et seq.); First and
20  TOOBA NAVEED;                        Fourteenth Amendments to the United States
    VALDOMERO LOPEZ;                     Constitution; 42 U.S. Code § 1983
21
22              Plaintiff,               Date:  TBD
                                         Time: TBD
23  v.                                   Judge: TBD

24  ALEX PADILLA, in his official
25  capacity as Secretary of State for the
    State of California; MELINDA
26  DUBROFF, in her official capacity of
    the San Joaquin County Registrar of
27  Voters, and DOES 1 through 50,

28

                                    1
    COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Defendant.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to grant both declaratory and injunctive relief, pursuant to 28 U.S.C. §§ 2201 and 2202.

2.      This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 12133 because this action arises under the United States Constitution and federal statutory law.  It seeks relief for the Plaintiffs based on a deprivation of constitutional and federally guaranteed statutory rights. Defendants have taken action, and refused to act, under color of state law.  Jurisdiction further vests pursuant to 42 U.S.C. §§ 1983 and 1988.

3.      This Court has supplemental jurisdiction over the claims arising under state law pursuant to 28 U.S.C. section 1367(a), as all state law claims for relief arise from the same nucleus of facts and form part of the same case or controversy under Article III of the United States Constitution.  State claims for relief include claims under California Code of Civil Procedure section 1085 (writ of mandate) and violations of the California Elections Code.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## INTRODUCTION AND FACTS

5.      This is a putative class action pursuant to Fed. R. Civ. P. 23 seeking (a) damages arising from Defendants' denial of certain Plaintiffs' right to vote in the March 3, 2020 California Presidential Primary and Spring Election (the "Spring Election"); and (b) prospective injunctive and declaratory relief requiring Defendants to establish reasonable, disability

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF                                    2

accessible, and constitutionally sufficient voting procedures (including voting by mail) for California's March 3, 2020 Partisan Primary and November 3, 2020 General and Presidential Election (the "Future 2020 Elections").

6.   This action is seeking remedial and prospective injunctive relief related to the March 3, 2020 California Presidential Primary and ongoing recount in San Joaquin County. Despite a worldwide pandemic involving a novel coronavirus known as COVID-19 that to date has infected more than 4.2 million people and killed approximately 283,850 individuals worldwide, MELINDA DUBROFF, in her official capacity of the San Joaquin County Registrar of Voters, chose politics over the interests of San Joaquin County citizens in an intentional and self-serving certification of an election that disenfranchised numerous voters in the Presidential Primary Election. This action is directed at the now-established harm that came about as a result of the Defendants' action and inaction.

7.   California Elections Code Section 3019, 15100 through 15112, and 15150 through 15452, et sequitur, expressly set forth the duties of a County elections official (i.e., the Registrar) with respect to the canvassing of votes and certification of election results.

8.   Plaintiffs seek relief for violations of San Joaquin County citizens right to vote, protected by the First Amendment to the U.S. Constitution and by their Fourteenth Amendment right to equal protection of the laws, pursuant to 42 U.S.C. § 1983; their rights under Section 2 of the Voting Rights Act (codified at 52 U.S.C. § 10101 *et seq.*); and in accordance with the voting provisions of the Americans with Disabilities Act (codified at 42 U.S.C. § 12101 *et seq.*). Plaintiff tells a story about how the Defendants' insistence on arbitrarily certifying an election during the pandemic left vulnerable voters disenfranchised and unable to exercise their fundamental right to vote without impairment of that choice. This lawsuit demonstrates that there is no compelling justification, let alone rational basis, for ALEX PADILLA, in his official capacity as Secretary of State for the State of California; MELINDA DUBROFF, in her official capacity of the San Joaquin County Registrar of Voters not to follow the Governor of California's Executive Order allowing for an extension of all canvassing, certification deadline periods while disruptions are present related to the pandemic.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF                                    3

9.      The Presidential Primary Election was held on March 3, 2020.  Voters are permitted to, and many did, submit their votes by way of a mail-in-ballot ("Vote-by-Mail ballots").  Upon receiving Vote-by-Mail ballots, the Registrar is required to confirm the identification envelope is signed, and to compare the voters' signature on the identification envelope containing the ballot with information in the voters' registration records to determine the signature compares.  If the Registrar determines the signature does not compare, or if the envelope is not signed, the Registrar is required to provide notice to all identified voters a minimum of eight days before the certification of the election to afford such voters the opportunity to verify their signatures or sign their envelopes.

10.     Even under normal circumstances, if the Registrar determines the signature does not compare to the voter registration records, the Registrar cannot reject a vote if a voter delivers in person, or by mail, fax, or email, a signed verification statement verifying their ballot submission, by 5 p.m. two days prior to the certification of the election, in which case, the Registrar must compare the signatures on the verification statement.

11.     If a voter neglects to sign their identification envelope, the Registrar cannot reject the unsigned Vote-by-Mail ballot if the voter signs the envelope at the Registrar's office by 5 p.m., two days prior to the certification of the election.  Alternatively, a voter can submit an "unsigned ballot statement" on election day before the polls close.

12.     Certification generally occurs no later than 30 days following the election, or by April 2, 2020; however, the Governor declared a state of emergency as a result of the threat of COVID-19, and issued an executive order March 20, 2020, extending all deadlines associated with "completing, auditing, and reporting on the official canvass" by 21 days.  The Governor further requested the Secretary of State to issue guidance to the Registrar concerning compliance with the Governor's order.  The Secretary of State did issue its memorandum regarding such compliance.  On March 23, 2020, the Secretary of State's memorandum confirmed the extension dates for all canvass-related deadlines.  Specifically, the Secretary of State extended the Registrar's date to send notices to voters to cure their signatures from March 25, 2020, to April 15, 2020, and extended the voters deadline to cure mismatched signatures or unsigned

identification envelopes from March 31, 2020, to April 21, 2020.  Therefore, prior to the voter's deadline to cure their votes, the Registrar had the authority to accept the voter's verifications or their attempts to cure any irregularities with their identification envelopes to ensure their votes were tabulated.

13.     The timeline for voters to cure their unsigned or non-compared signature was therefore extended by executive order, and the Secretary of State's memorandum, to April 21, 2020, because of the COVID 19 pandemic impacts on the election process.

14.     The Registrar failed to notify voters to cure their unsigned or non-compared signature before certification as required by statute.

15.     An attorney with the Secretary of State's office recently signed a declaration saying that the extension of time granted to certify the Presidential Primary Election is permissive at the Registrar's sole discretion, notwithstanding the previous memorandum's language that claimed the deadline dates for cure votes had been extended to April 21, 2020, as well as language requiring election officials to notify the voters of such deadlines.

16.     Notwithstanding the Secretary of State's declaration deadlines, the Registrar certified the election on April 5, 2020.  Instead of notifying voters of the dates to cure their signatures set by the Secretary of State, the Registrar hastily mailed notices to some voters, and contacted others by phone, in her rushed attempt to prematurely certify the election on the arbitrary date of Sunday, April 5, 2020 at 5:30 pm.  The false urgency resulted in an egregious violation of many voter's Constitutional rights by frustrating their ability to have their ballot counted properly and included in the totals of votes cast with respect to candidates for public office and ballot measures.

17.     In addition, the Registrar was aware that she had failed to adequately notify voters to cure their unsigned or non-compared signature and instead of correcting the situation chose to arbitrarily certify the election on a Sunday night when she had additional time granted by Secretary of State as per the Governor's Executive Order extending the time to certify the election by 21 days.  The Registrar had additional time granted by the Governor to avoid disenfranchising voters to count every valid vote, but she failed to notify voters of the additional

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF                                    5

1   time and rushed the certification.

2       18.    Because of growing concerns and statements issued by the Governor and Centers

3   for Disease Control and Prevention, many individuals were fearful of handling received mail for

4   concerns of the possible transmission of the COVID-19 virus via handling documents.  Many

5   individuals therefore did not receive actual notice from the Registrar of their rights prior to the

6   Registrar's April 5, 2020, certification in time to cure by signing a verification or submitting a

7   signature to ensure their vote was not invalidated.  Moreover, many voters were unable or afraid

8   to leave their houses to go to mailboxes or the post office to return their verification statements.

9   By the Registrars own admissions, she failed to send some voters written notification because

10  she was past the time to legally send cure notices.

11      19.    Further frustrating legislative intent and voter's constitutional rights, due to the

12  COVID-19 pandemic, the County Building where the Registrar's office is located on the third

13  floor was closed to the public during the cure period, and people were subject to a State-wide

14  Shelter-in-Place Order making travel illegal.  The Governors order extending time recognized

15  that voters were unable or afraid to leave their houses to go to their mailboxes or the post office

16  to return their verification statements.  Accordingly, those individuals receiving notice that their

17  identification envelope was unsigned could not sign the envelope at the Registrar's office, as

18  required by law.  Very likely voters were delayed in receiving said notices from the Registrar do

19  to documented disruptions in the United States Postal Service.  All voters whose ballots were

20  rejected by the Registrar were precluded from delivering their verification in person,

21  disproportionately impacting those individuals who lack access or the ability to utilize electronic

22  means of submission by either facsimile or electronic mail, such as the impoverished and elderly

23  communities.

24      20.    Again, some individuals received a mere phone call ostensibly advising that their

25  votes would not be considered.  The Registrar did not document these calls.  The Registrar

26  cannot tell anyone what the voter was told in said phone call.  There was no standard script for

27  staff in how they guided and explained to said voter of the available verification process to cure,

28  protect their vote, and guarantee that said vote will be counted.  This process can only be

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF                                    6

described as arbitrary and capricious. Most disconcerting is a voter was not given enough time to verify their vote as required by election code. Information obtainable from the Registrar's website incorrectly advised voters that they could submit their verification forms by November 25, 2018, (sic) adding to the confusion of the voting process for anyone who did not receive notification via mail, or anyone who also accessed the conflicting online notification.

21.     Plaintiff is informed and believes, and on this basis alleges that at least 36 and maybe as many as 50 Vote-by-Mail voters submitted their signature verifications to the Registrar during the recount and before the Secretary of State's April 21, 2020 deadline; however, the Registrar refused to process and tabulate those ballots in the recount.  San Joaquin County held its San Joaquin County Presidential Primary Election on Tuesday, March 3, 2020, which included the race for the top two candidates for Assembly in the California Assembly District 13.

22.     Plaintiff was a candidate for Assembly in the California Assembly District 13.  As can be seen in the Registrar's certified statement of result of election, submitted with a request for judicial notice, submitted herewith, Plaintiff received 31.24% of the certified vote, placing third.  Kathy Miller placed second with 31.27% of the certified vote. Plaintiff is informed and believes that thirty votes separated Kathy Miller and Plaintiff.  First place and second place finishers in Presidential Primary Race for Assembly in the California Assembly District 13 advance to the Presidential General Election. During the recount the separation has become closer and as of April 26, 2020, Plaintiff is informed and believes, only 22 votes separate Kathy Miller and Plaintiff.

23.     Plaintiff's:  Alex Gonzalez,  Latino male; Annette Zimmer,  female; Francisco Macias, Latino male; Jamar C. Berry, African American male; Jo A Laing, senior citizen female who had a stroke recently and cannot sign exactly the same as when she originally registered to vote many years ago; Benjamin R Herrera, Latino senior citizen male with Dementia; Divine Jane Leanos, Filipino female; Elizabeth Lawrence, senior citizen Disabled female; Marc Lawrence, senior citizen male; Kalani Marshall, African American male; Tarakdeep Singh, East Indian, male college student; Tooba Naveed East Indian East Indian, male college student; Valdomero Lopez, Latino male voted in the California Assembly

District 13 race and were duly registered in San Joaquin County and whom timely voted by mail in the March 3, 2020, Presidential Primary Election and have signed and submitted affidavits and turned said affidavits into the San Joaquin County Registrar's Office verifying their signatures for the vote they cast and they have not been counted by the Registrar.  These plaintiffs were voters in California Assembly District 13 of San Joaquin County for the March 3, 2020 Presidential Primary Election and turned in their affadavits to the Registrar before 5:00 pm on April 21st, 2020, the extended deadline for said cure granted by the Governor's Emergency Executive Order.

24.    Plaintiff is informed and believes, and on this basis alleges that of those known 36 Vote-by-Mail voters that submitted their signature verifications to the Registrar during the recount and before the Secretary of State's April 21, 2020 deadline at least twenty (20) of them are women which represents fifty-five percent (55%), twenty two (22) are from a minority group which represents sixty one percent (61%)  Of the minority groups, seven (7) voters are Latino, five (5) voters are East Asian Hmong/Vietnamese, six (6) voters are Central Asian Indian/Punjabi, and four (4) voters are African American.

25.    Notification letters, from the San Joaquin County Registrar—which is a covered jurisdiction for Spanish language access under Section 203 of the Voting Rights Act—are provided only in English. Applicants who are limited English proficient have more difficulty understanding the notification letter. They also face additional challenges when communicating with election officials and completing other tasks required to remedy the problem with their signature status.

26.    In addition, minority voters are more likely than White voters to work multiple jobs, have inflexible schedules, maintain irregular work hours, lack access to transportation, or suffer from financial hardship or economic displacement. It is more difficult for these voters to follow up with election officials in a timely manner than those who have access to transportation, can afford to take time off from work, and have a flexible schedule.

27.    Plaintiff is aware of fourteen (14) other Vote-by-Mail voters that submitted their signature verifications to the Registrar during the recount and before the Secretary of State's

April 21, 2020 but is unaware of their minority status.  Plaintiff believes this has disenfranchised at least 45-60 Vote-by-Mail voters that submitted their signature verifications to the Registrar during the recount and before the Secretary of State's April 21, 2020.

28.     Plaintiff lawfully requested the Registrar to count Vote-by-Mail voters that submitted their signature verifications to the Registrar during the recount and before the Secretary of State's April 21, 2020 for the office of California State Assembly District 13. However, the Registrar continues to refuse to process any of the ballots of voters who submitted verifications in accordance with the Secretary of State deadlines, claiming they were not timely submitted.  The Registrar admitted that she ran out of time and could not mail cure notices to the very same voters, giving them an opportunity to verify their vote. The Registrar had the lawful authority to certify the election later if she chose to take the additional time granted by Secretary of State as per the Governor's Executive Order extending the time to certify the election by 21 days.

29.     On April 23, 2020 at 11:00 a.m., Plaintiff was at the San Joaquin County Registrar's Office located at 44 N. San Joaquin Street, Ste. 350, Stockton, CA 95202.  Plaintiff had a discussion with San Joaquin County Registrar of Voters, Melinda Dubroff.  During said discussion, Melinda Dubroff explained that when her staff identified a segment of voters who had issues requiring voters to cure their vote by mail ballots "it was now too late to send out mail curing notices and affidavits to voters, so staff made calls."  The San Joaquin County Registrar of Voters, Melinda Dubroff, indicated to Plaintiff that "I am not sure" if logs were kept of staff calls to voters in an attempt to cure vote by mail signature issues. Likewise, the Registrar did not have a script for staff to call said voters and could not verify what if anything was said to inform said voters on how they could cure their ballots.

30.     Plaintiff has identified at least thirty-six (36) voters in the California Assembly District 13 of San Joaquin County whom timely voted by mail in the March 3, 2020, Presidential Primary Election that have signed affidavits and turned said affidavits into the San Joaquin County Registrar's Office verifying their signatures for the vote they cast and they have not been counted by the Registrar.  These thirty-six (36) voters in California Assembly District 13 of San

Joaquin County for the March 3, 2020 Presidential Primary Election turned in their votes to the Registrar before 5:00 pm on April 21st, 2020, the extended deadline for said cure granted by the Governor's Emergency Executive Order.

31.     The Registrar neglected her duty to give such notice to the people; however, voters clearly understood from the Secretary of State's memorandum, and the March 3, 2020, Presidential Election Calendar, that they had until April 21, 2020, to cure any matters with their signatures on the identification envelopes.

32.     Plaintiffs seek relief for violations of their right to vote, protected by the First Amendment to the U.S. Constitution and by their Fourteenth Amendment right to equal protection of the laws, pursuant to 42 U.S.C. § 1983; their rights under Section 2 of the Voting Rights Act (codified at 52 U.S.C. § 10101 et seq.); and in accordance with the voting provisions of the Americans with Disabilities Act (codified at 42 U.S.C. § 12101 et seq.). This lawsuit demonstrates that there is no compelling justification, let alone rational basis, for the Registrar to have refused to take action in extending the certification of the election and instead disenfranchise lawful voters.

33.     The ongoing recount requested by the Plaintiff provides the Registrar with a simple mechanism to correct the mistake she made in failing to adequately notify voters who legally Voted-by-Mail but there is a missing or unmatched signature.

34.     This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1343(a) because it seeks to redress the deprivation, under color of state law, of rights, privileges and immunities secured by the Voting Rights Act and 28 U.S.C. § 1331, because it arises under the laws of the United States.

## CLASS ALLEGATIONS

35.     Plaintiff proposes a Class distinguished by the remedial and prospective relief sought in this Complaint.

36.     The Class consists of thirty-six (36) voters registered to vote in the San Joaquin County in the State of California as of March 3, 2020, who due to either disabilities, language barriers, or genuine fear of contracting the novel coronavirus, did not vote in person on March 3,

2020. All Class members submitted a timely vote-by-mail ballots in accordance with the rights afforded to them by the State of California. Despite the Class members lawful and timely submission of ballots, the County Registrar of Voters' disenfranchised the Class when she refused and failed to certify the Class' votes.

37.     This case may be appropriately maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure because all of the prerequisites set forth under Rule 23(a) and 23(b) are met.

Rule 23(a) Factors

38.     Numerosity. Members of the Class are so numerous that joinder of all such members is impracticable, if not impossible. Although the Complaint identifies thirty-six (36) members of the Class, there is reason to believe that more, possibly upwards of sixty (60) San Joaquin County voters in District 13 have been disenfranchised as a result of the actions taken by the County Registrar of Voters.

39.     Existence of Common Questions of Fact and Law. There are questions of law and fact common to the Class with respect to the remedial and prospective relief. Specifically, such common issues include, but are not limited to:

40.     All members are residents of San Joaquin County in the State of California.

41.     All members were registered to vote by March 3, 2020 and opted to lawfully vote by mail.

42.     All members were precluded from entering the County Registrar of Voters' office within the respective timeframe from when they were notified (either officially or unofficially, if at all) to final deadline to verify their votes due to the restricted access to the office building.

43.     All members were affected by the unprecedented voting regulations.

44.     All members were affected by the variety and ambiguity of instruction received from Defendant and were therefore unequally treated in pursuit of submitting their vote.

45.     The damages caused by Defendant in relation to her misconduct during the Primary Presidential Election stem from the same uniform misconduct and deprivation of the Class members' rights.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF                                    11

46.     Typicality. The Class members' claims have a common origin and share common bases with the Plaintiff which originate from the same unconstitutionally invalid practice of the Defendant. If brought and prosecuted individually, the claims of all the class members would necessarily require proof of the same material and substantive facts, rely upon the same remedial theories, and seek the same relief.

47.     Adequacy. The Plaintiff named in this complaint will fairly and adequately protect the interests of the Class because she and her counsel possess the requisite resources and experience to prosecute this case as a class action. Plaintiff's interests do not conflict with the interests of the Class members she seeks to represent.

Rule 23(b) Factors

48.     Fed. R. Civ. P. 23(b)(1). The prosecution of separation actions by the Class members would create a risk of inconsistent or varying adjudications with respect to individuals that would establish incompatible standards of conduct for parties opposing the class under Fed. R. Civ. P. (23(b)(1)(A). In addition, the prosecution of separate actions would create a risk of adjudication with respect to individual members of the class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, and subsequently impair, or impede their ability to protect their interests under Fed. R. Civ. P. (23)(b)(1)(B).

49.     Fed. R. Civ. P. 23(b)(2). Defendant has acted, refused to act, or likely will continue to act on grounds that apply generally to all class members by refusing to respect the constitutional rights of the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

50.     Fed. R. Civ. P. 23(b)(3).  There are common questions of law or fact common to all members of the Class that predominate over any questions affecting only individual members of the Class. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy as provided for in Fed. R. Civ. P. 23(b)(3)(A) to (D).

51.     Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.  The names and addresses of the

members of the Class are available from the State of California which maintains a list of all registered voters and those who voted in the March 3, 2020 election. The County Registrar of Voters' office will also have a list of people whose votes remain to be certified pursuant to this Complaint.

## **GROUNDS FOR RELIEF REQUESTED**

52.     Defendant had and continues to have a ministerial duty, as set forth in Elections Code.

53.     Defendant had and continues to have a ministerial duty, to count all legally cast votes in the Presidential Primary Election.

54.     Defendant was obligated to perform her ministerial duties no later than April 21, 2020.  Defendant is now in violation of the statutorily defined timeframe to perform the ministerial acts required. By failing to perform their ministerial duties within the prescribed timeframe, Defendant breached their obligations under the Election Code and Executive Order of the Governor.

55.     As a result of Defendant's failure to perform her ministerial duties set forth in Elections Code, Plaintiff is suffering irreparable harm since she has not had lawful votes counted that could realistically advance Plaintiff to the General Presidential Election.

56.     As a result of the Defendants' failure to perform their ministerial duties set forth in Elections Code, both the taxpayers and the voters of San Joaquin County will suffer severe consequences since the will of those voters who cast their votes at the March 3, 2020 Presidential Primary Election has been ignored, and effective government in San Joaquin County is being compromised due to the creation of an ongoing and unnecessary delay in declaring what two Assembly 13 candidates advance to the Presidential General Election.

57.     28 U.S.C. §§ 2201 and 2202 authorizes the use of an injunction, as follows:

58.     An injunction may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled and from which the party is

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF                                    13

unlawfully precluded by such inferior tribunal, corporation, board, or person.

59.     Plaintiff has no plain, speedy, or adequate remedy in the ordinary course of law to rectify this situation in that without an order from this Court directing Defendants, pursuant to Constitutional mandates, to count lawfully cast 36 Vote by Mail votes in Defendants possession, Defendants will continue to ignore their statutorily defined duties, thereby depriving Plaintiff of a fair and legal election and causing prejudice to the citizens of San Joaquin County. Plaintiff hereby realleges and incorporates each and every allegation contained in each of the foregoing paragraphs of the complaint as though fully set forth herein.

<u>**FIRST CLAIM FOR RELIEF**</u>

**Declaratory and Injunctive Relief Violations of Amendments I and XIV of The U.S.**

**Constitution 42 U.S.C. § 1983**

**Total Deprivation of Voting Rights**

60.     Plaintiff hereby realleges and incorporates each and every allegation contained in each of the foregoing paragraphs of the complaint as though fully set forth herein.

61.     The First Amendment guarantees the rights of citizens to participate in the political process, including the right to vote.

62.     The Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

63.     Both the Fourteenth Amendment of the United States Constitution and Article I, Section 7, of the California Constitution prohibit denial to person of the equal protection of the laws. These constitutional provisions require that persons who are similarly situated receive like treatment under the law and that statutes may single out a class for distinction only if that classification is not based on a protected classification or quasi-protected classification and bears a rational relationship to a legitimate purpose of the statute.

64.     The United States Supreme Court ruled in *Reynolds v. Sims* that because "the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized."

65. States are not obligated by the U.S. Constitution to allow vote-by-mail. However, once they decide to make vote-by-mail voting available, under ordinary circumstances, a state that denies absentee ballots to some voters while allowing other voters in similar or identical circumstances to use absentee ballots, without affording a comparable alternative means to vote, is engaging in arbitrary, invidious discrimination that violates the Equal Protection Clause. When the State's arbitrary discrimination rests on its stubborn refusal to acknowledge how the most serious public health crisis in the United States for more than a century would certainly destroy many voters' ability to cure their vote-by-mail as protected by statute, the State's violation of its citizens' most fundamental right is outrageous.

66. The California Governor's Executive Order, established the defendant's right to postpone the certification of the Presidential Primary Election, meaning that right and authority in California existed solely and exclusively with the defendants which chose not to take action despite the pandemic. Such inaction is the equivalent of action under the law.

67. Defendant may not irrationally single out one class of individuals for discriminatory treatment. The Equal Protection Clause denies Defendant the power to act different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of the statute.

68. A classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly situated are treated in the same manner. The Registrar has unlawfully violated Plaintiff's and other voters' Constitutional rights by differentiating treatment against otherwise similarly situated property owners on the basis of wealth, age, and disability.

69. There exists a justiciable and triable dispute and controversy between the parties which is ripe for adjudication. Plaintiff contends that the Registrar's action, or inaction, is invalid and void as violating equal protection of the law. Plaintiff is informed and believes, and on this basis alleges, that the Registrar denies such contention and contends otherwise. A declaratory judgment is appropriate and necessary, to avoid the potential of multiplicity of actions, to prevent irreparable harm, to ensure proper enforcement of the law, and to resolve a matter of public

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF                    15

1  interest.

2  70.     It is a matter of historical record that responsible, prudent governments have

3  postponed elections that were scheduled to take place when emergencies struck. Residents of

4  New York City were just starting to vote in the city's mayoral primary when the Twin Towers of

5  the World Trade Center were attacked by terrorists on September 11, 2001. New York City

6  stopped the election in progress and held the primary two weeks later.  Here, the San Joaquin

7  County Registrar had the right granted by the Governor to extend the certification of an election

8  impacted by a pandemic and chose to disenfranchise voters instead.

9  71.     Hurricane Katrina destroyed much of New Orleans in late August 2005, and more

10  than five months later, the city postponed its first round of mayoral voting, originally scheduled

11  for February 4, 2006, so it could continue to deal with the devastation left in Katrina's wake.

12  New Orleans ultimately held the mayoral primary on April 22, 2006. Here, the San Joaquin

13  County Registrar had the right granted by the Governor to extend the certification of an election

14  impacted by a pandemic and chose to disenfranchise voters instead.

15  72.     The United States Supreme Court has established a test, called

16  "Anderson/Burdick Balancing," to guide lower federal courts' decision making in challenges to

17  state election law, regardless of the underlying legal theory used to support the challenge. This

18  Court must weigh the character and magnitude of the injury to the plaintiffs' First and Fourteenth

19  Amendment rights against the precise interests put forward by the state as justifications for

20  restricting the right to vote, in light of the extent to which those state interests make it necessary

21  to impair the plaintiffs' right to vote.

22  73.     Plaintiff has no adequate remedy at law and may suffer irreparable injury absent

23  injunctive relief. A preliminary and permanent injunction should issue prohibiting Defendant

24  from applying or enforcing the Ordinance or treating such Ordinance as valid.

25  74.     Plaintiff has no plain, speedy or adequate remedy in the ordinary course of law.

26  The Court should issue an injunction extending the deadline to verify voter's signatures to April

27  21, 2020, consistent with the Governor's executive order and the Secretary of State's

28  memorandum and ordering the Registrar to tabulate all votes which were timely verified.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF                                    16

## SECOND CLAIM FOR RELIEF

### Violation of Voters Rights Act (As Amended)

### 42 U.S.C. §1983

75.     Plaintiff hereby realleges and incorporates each and every allegation contained in each of the foregoing paragraphs of the complaint as though fully set forth herein.

76.     California has a centuries-long history of discrimination against African Americans and Latinos that has interfered with their ability to participate in registration and voting. This history dates back to the State's founding.

77.     These election conditions violate Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, because they result in a denial and abridgment of the right to vote on account of race and language minority, as well as age and disability, in that, under the totality of the circumstances, Plaintiffs and minority voters are denied an equal opportunity to participate effectively in the political process.

78.     Voting is a fundamental right guaranteed by the U.S. Constitution as the United States Supreme Court told us long ago in Reynolds v. Sims, 477 U.S. 533 (1964):

> Undeniably the Constitution of the United States protects the right **of all qualified citizens** to vote, in state as well as in federal elections. A consistent line of decisions by this Court in cases involving attempts to deny or restrict the right of suffrage has made this indelibly clear. It has been repeatedly recognized that **all qualified voters have a constitutionally protected right to vote**, *Ex parte Yarbrough*, 110 U.S. 651, 4 S.Ct. 152, 28 L.Ed. 274, and **to have their votes counted**, *United States v. Mosley*, 238 U.S. 383, 35 S.Ct. 904, 59 L.Ed. 1355. In *Mosley* the Court stated that it is 'as equally unquestionable that the right to have one's vote counted is as open to protection . . . as the right to put a ballot in a box.' 238 U.S., at 386, 35 S.Ct., at 905. **The right to vote can neither be denied outright**, *Guinn v. United States*, 238 U.S. 347, 35 S.Ct. 926, 59 L.Ed. 1340, *Lane v. Wilson*, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281, nor destroyed by alteration of ballots, see *United States v. Classic*, 313 U.S. 299, 315, 61 S.Ct. 1031, 1037, 85 L.Ed. 1368, nor diluted by ballot-box stuffing *Ex parte Siebold*, 100 U.S. 371, 25 L.Ed. 717, *United States v. Saylor*, 322 U.S. 385, 64 S.Ct. 1101, 88 L.Ed. 1341. As the Court stated in *Classic*, 'Obviously included within the right to choose, secured by the Constitution, **is the right of qualified voters within a state to cast their ballots and have them counted** . . . .'313 U.S., at 315, 61 S.Ct., at 1037. Racially based gerrymandering, *Gomillion v. Lightfoot*, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110, and the conducting of white primaries, *Nixon v. Herndon*, 273 U.S. 536, 47 S.Ct. 446, 71 L.Ed. 759, *Nixon v. Condon*, 286 U.S. 73, 52 S.Ct. 484, 76 L.Ed. 984, *Smith v. Allwright*, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987, *Terry v. Adams*, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152, both of which result in denying to some citizens their right to vote, have been

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF                    17

held to be constitutionally impermissible.

* * *

Undoubtedly, the right of suffrage is a **fundamental matter** in a free and democratic society. Especially since the right to exercise the franchise in a **free and unimpaired** manner is preservative of other basic civil and political rights, **any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized**. Almost a century ago, in *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220, the Court referred to '**the political franchise of voting' as 'a fundamental political right, because preservative of all rights**.' 118 U.S., at 370, 6 S.Ct., at 1071. Legislators represent people, not trees or acres. Legislators are elected by voters, not farms or cities or economic interests. As long as ours is a representative form of government, and our legislatures are those instruments of government elected directly by and directly representative of the people, the right to elect legislators in a free **and unimpaired** fashion is a bedrock of our political system.

79.     The Defendants understood the dangers of COVID-19 presented during the Primary Election and cavalierly (and for clearly political reasons) refused to take action to accept the modified deadlines to certify the election granted by the Governor, which decision runs counter to every credible public health pronouncement about COVID-19 in the United States and the direction of doctors, scientists, epidemiologists, virologists, infectious disease specialists, and public health experts by which clearly recognize normal activities have impacted voters ability to cure their vote (even if we assume that voters were properly notified to cure by the Registrar).

80.     San Joaquin County voters deserve orderly process and procedures to cure their vote this year that do not obligate them to choose between risking (or being terrified for) their lives (guaranteed against State interference to each of them pursuant to the Fourteenth Amendment of the U.S. Constitution) and their fundamental right to vote, which since the Supreme Court's 1886 decision in *Yick Wo* has been recognized as a fundamental element of citizenship for all qualified citizens in the United States. Because there is no compelling justification or rational basis for ALEX PADILLA, in his official capacity as Secretary of State for the State of California; MELINDA DUBROFF, in her official capacity of the San Joaquin County Registrar of Voters not to follow the Governor of California's Executive Order allowing for an extension of all canvassing, certification time periods if disruptions are present related to the pandemic.

81.     On December 31, 2019, medical officials in Wuhan City, Hubei Province of

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF                    18

China ("Wuhan") reported to the China Country Office of the World Health Organization ("WHO") about cases of pneumonia with unknown cause. Within four days, Wuhan had a total of 44 patients fitting this description. By January 7, 2020, Chinese authorities had isolated the disease as a novel coronavirus. The term "coronavirus" applies to a large group of viruses that cause disease in animals and humans. They often circulate among camels, cats, and bats. Sometimes they evolve and affect human beings. WHO named the novel coronavirus "COVID-19" on February 11, 2020 and we use that term in this Complaint to refer to the disease giving rise to the current global pandemic affecting California.

82.     On January 20, 2020, a 35-year old man from Seattle, Washington was diagnosed with COVID-19, the first such case identified in the United States. In its first "Situation Report" a day later, WHO informed that there were 282 known cases of COVID-19 worldwide; most of those cases were in various Chinese provinces but a few others existed in Japan, Korea, and Thailand. The Seattle case obviously had just entered the data set and did not make WHO's first published report. By the time of WHO's publication, six individuals had died of COVID-19. On January 30, 2020, WHO declared COVID-19 a Public Health Emergency of International Concern.

83.     COVID-19 took off like a rocket. By March 11, 2020, WHO reported that there were more than 118,000 cases of the disease worldwide in at least 110 countries and territories, with great concern about a sustained risk of global spread. That day, WHO classified COVID-19 as a pandemic, which the U.S. Centers for Disease Control ("CDC") defines as follows:

> Pandemics happen when new (novel) . . . viruses emerge which are able to infect people easily and spread from person to person in an efficient and sustained way. Because the virus is new to humans, very few people will have immunity against the pandemic virus, and a vaccine might not be widely available. The new virus will make a lot of people sick. How sick people get will depend on the characteristics of the virus, whether or not people have any immunity to that virus, and the health and age of the person being infected.

CDC Website, accessed on April 11, 2020 at https://www.cdc.gov/flu/pandemic-resources/basics/index.html.

84.     Dr. Tedros Adhanom Ghebreyesus, WHO Director-General, said at the time of

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF                              19

the pandemic declaration: "This is not just a public health crisis, it is a crisis that will touch every sector. So, every sector and every individual must be involved in the fights." Jamie Ducharme, "World Health Organization Declares COVID-19 a 'Pandemic:' Here's What That Means," Time, March 11, 2020, accessed on April 11, 2020 at https://time.com/5791661/who-coronavirus-pandemic-declaration/.  COVID-19 is a disease that spreads exponentially and has demonstrated its ability to transmit easily among the population, often without detection, with the ability to wreak havoc on healthcare resources throughout the world. For these reasons (and others), on March 4, 2020, California Governor Gavin Newsom declared a public health emergency to direct all resources needed to respond to and contain COVID-19 in California. Then on March 13, 2020, President Donald J. Trump declared a National Emergency concerning the pandemic.

85.    New cases and deaths are climbing exponentially on a daily basis.  The data being exchanged by scientists and medical professionals are largely incomplete and likely understate the number of people who are and have been infected with COVID-19, because a large number of individuals who have the disease are believed to be asymptomatic. For example, the Centre for Evidence-Based Medicine at Oxford University in England studied the proportion of COVID-19 carriers who were either entirely asymptomatic or presenting mild symptoms and concluded that between 5 and 80 percent of people testing positive for the disease may be asymptomatic. See Carl Heneghan, Jon Brassey, and Tom Jefferson, COVID-19: What Proportion are Asymptomatic, Centre for Evidence Based Medicine, accessed on April 11, 2020 at https://www.cebm.net/covid-19/covid-19-what-proportion-are-asymptomatic/.  For example, 18 percent of those who tested positive for COVID-19 on the Diamond Princess Cruise showed no symptoms, as did 57 percent of the residents at the King County, Washington long-term care facility where the disease first took hold in the United States. Whether the number of asymptomatic individuals is on the low range (five percent) or the high range (80 percent), it is quite clear that many people are carrying COVID-19 without knowing it. The result is that hundreds of thousands of people around the world are presently ensuring the continuing spread of this disease.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF                                        20

86.     With full knowledge of the medical confusion on who is carrying the disease in California, how easily it transmits from person to person, and the deadly and seemingly random nature of COVID-19, the Defendants nevertheless intentionally chose to shirk their oaths of office, to enable voters to cure their votes in the Presidential Primary Election.  The Defendants named in this Complaint who were charged with running and administering the Presidential Primary Election on its behalf, frustrated a segment of San Joaquin County citizen's ability to cure their vote amidst the first pandemic of this scale since the 1918 influenza that killed approximately 50 million people worldwide. This is remarkable, as 18 other states and territories (Alaska, Connecticut, Delaware, Georgia, Hawaii, Indiana, Kentucky, Louisiana, Maryland, Montana, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, West Virginia, Wyoming, and Puerto Rico) deemed it reasonable and necessary to literally postpone or alter the approach to their spring elections because of the risk to public health due to the COVID-19 situation.

87.     This relief must be granted to ensure that voters rights are not abridged in future elections in 2020 while the pandemic runs its course.

## <u>THIRD CLAIM FOR RELIEF</u>

**Declaratory and Injunctive Relief Based on Constitutional Provisions Requiring Procedural and Substantive Due Process of the Law**

**(42 U.S. Code § 1983-Civil action for deprivation of rights)**

88.     Plaintiff hereby realleges and incorporates each and every allegation contained in each of the foregoing paragraphs of the complaint as though fully set forth herein.

89.     The Registrar's conduct is substantively unreasonable, irrational, arbitrary and/or capricious and lacking any real and substantial relation to the object sought to be obtained, that it violates procedural and substantive due process of the law.

90.     The Registrar failed to provide sufficient justification for denying voter's their opportunity to cure their signatures, and by failing to provide them sufficient information and instruction on how to cure their votes, and effectively denied Plaintiff and voters the right to vote, which necessarily includes having their vote counted.

91.     Under the law of the Ninth Circuit, a 42 U.S. Code § 1983 claim alleging a

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF                    21

procedural due process denial requires proof of three elements: (1) a deprivation of a constitutionally protected liberty interest; (2) a state action; and (3) constitutionally inadequate process.

92.     In this case, the first element is the right to vote and have your vote counted. The second element is the defendant's (San Joaquin County Registrar) failure to count vote-by-mail ballots that were lawfully cast in the March 3, 2020 primary.  The third element was a defective notice sent to vote-by-mail voters by the defendant to cure their vote but did not give a meaningful avenue to cure said vote-by-mail ballot.  Courts around the country have recognized that "[w]hile it is true that absentee voting is a privilege and a convenience to voters, this does not grant the state the latitude to deprive citizens of due process with respect to the exercise of this privilege." *Raetzel v. Parks/Bellemont Absentee Election Bd.*, 762 F. Supp. 1354, 1358 (D. Ariz. 1990); see also *Zessar v. Helander*, No. 05 C 1917, 2006 WL 642646, at *6 (N.D. Ill. 2006) ("approved absentee voters are entitled to due process protection."). Having created an absentee voter regime through which qualified voters can exercise their fundamental right to vote, the State must now provide absentee voters with constitutionally adequate due process protection.

93.     The remaining question is whether California vote-by-mail statutes provides adequate process. See *Grayden*, 345 F.3d at 1232. "To determine what process is due, courts turn to the test from *Mathews v. Eldridge*, which requires the balancing of a number of considerations:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Hansen I*, 736 F.3d at 966 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). In addition, the Mathews Court implored courts to recognize that "procedural due process rules are shaped by the risk of error inherent in the truthfinding process as applied to the generality

of cases, not the rare exceptions." (*Id.* 424 U.S. at 344.)

94.     There exists a justiciable and triable dispute and controversy between the parties which is ripe for adjudication. Plaintiff contends that the Registrar's conduct is invalid and void as violating due process of the law. Plaintiff is informed and believes, and on this basis alleges, that the Registrar denies such contention and contends otherwise. A declaratory judgment is appropriate and necessary, to avoid the potential of multiplicity of actions, to prevent irreparable harm, to ensure proper enforcement of the law, and to resolve a matter of public interest.

95.     Plaintiff has no adequate remedy at law and may suffer irreparable injury absent injunctive relief. A preliminary and permanent injunction should issue prohibiting Defendant from denying voters the right to vote by refusing to tabulate those votes which were timely verified.

96.     Plaintiff has no plain, speedy or adequate remedy in the ordinary course of law. This court should issue an injunction extending the deadline to verify voter's signatures to April 21, 2020, consistent with the Governor's executive order and the Secretary of State's memorandum and ordering the Registrar to tabulate all votes which were timely verified.

## FOURTH CLAIM FOR RELIEF

### Violation of the Americans with Disabilities Act 42 U.S.C. § 12131 *et seq*.

97.     Plaintiff hereby realleges and incorporates each and every allegation contained in each of the foregoing paragraphs of the complaint as though fully set forth herein.

98.     Voting is one of our nation's most fundamental rights and a hallmark of our democracy. Yet for too long, people with disabilities have been excluded from this core aspect of citizenship. People with intellectual or mental health disabilities have been prevented from voting because of prejudicial assumptions about their capabilities. People who use wheelchairs or other mobility aids, such as walkers, have been unable to enter the polling place to cast their ballot because there was no ramp. People who are blind or have low vision could not cast their vote because the ballot was completely inaccessible to them.

99.     Invaluable federal civil rights laws have been enacted to combat such forms of discrimination against those with disabilities and to protect the fundamental right to vote for all

Americans. These laws include: The Americans with Disabilities Act (the "ADA"); The Rehabilitation Act of 1973 (the "Rehabilitation Act"); the VRA; the Voting Accessibility for the Elderly and Handicapped Act of 1984 (the "VAEHA"); the National Voter Registration Act of 1993 ("NVRA"); and the Help America Vote Act of 2002 (the "HAVA").

100.    This action is brought by Plaintiffs to enforce Title II of the ADA, 42 U.S.C. §§ 12131-12134, and its implementing regulation, 28 C.F.R. Part 35, against ALEX PADILLA, in his official capacity as Secretary of State for the State of California;  MELINDA DUBROFF, in her official capacity of the San Joaquin County Registrar of Voters to follow the Governor of California's Executive Order allowing for an extension of all canvassing, certification time periods if disruptions are present related to the pandemic.

101.    Public entities must ensure that they do not have policies, procedures, or practices in place that interfere with or prohibit persons with certain disabilities from registering to vote or voting based on their disability. For example, an election official cannot refuse to provide an absentee ballot or voter registration form to a person with a disability because the official knows the voter resides in a nursing home.

102.    In addition, the laws require public entities to modify their voting policies, practices, and procedures when such modifications are necessary to avoid discrimination on the basis of a voter's disability.

103.    At all relevant times hereto, upon information and belief, Defendants intentionally, with malice and reckless indifference of the Plaintiffs seeking protection of the ADA, violated the ADA and Rehabilitation Act by refusing to accommodate their disabilities to allow them to cure their vote-by-mail, despite knowing that the ADA and Rehabilitation Act required such accommodations.

104.    At all relevant times hereto, upon information and belief, Plaintiffs had to retain legal counsel to bring this action and as such according to the ADA and the Rehabilitation Act the below identified attorneys shall be entitled to fair and reasonable attorneys' fees and costs incurred in bringing this action under the ADA.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

for relief as follows:

1.     The issuance of an alternative Writ of Mandate under seal of this Court: Ordering Respondents MELINDA DUBROFF, in her official capacity of the San Joaquin County Registrar of Voters to immediately count the identified thirty-five (35) voters in the California Assembly District 13 of San Joaquin County whom timely voted by mail in the March 3, 2020, Presidential Primary Election and that have signed affidavits and turned said affidavits into the San Joaquin County Registrar's Office verifying their signatures for the vote they cast before 5:00 pm on April 21st, 2020, the extended deadline for said cure granted by the Governor's Emergency Executive Order or, alternatively, show cause at a time and place specified by court order, why they have not done the foregoing and why a peremptory writ of mandate should not issue;

2.     Ordering fair, reasonable, and constitutionally sufficient procedures governing the future 2020 elections so as to allow Plaintiffs and all members of the Class to safely participate in those elections without concerns over COVID-19;

3.     Imposing all other preliminary, permanent, declaratory, ancillary, and supplemental relief as alleged herein or otherwise pursued in this action;

4.     Certifying each and every Class and Sub-Class as defined this this Amended Complaint or hereafter established pursuant to Fed. R. Civ. P. 23;

5.     Appointing the undersigned as Class counsel under Fed. R. Civ. P. 24(g);

6.     For attorney's fees incurred pursuing this relief,

7.     For costs of suit incurred herein; and

8.     For such other and further relief which the Court deems just and proper.

///

////

**Rosenfeld & Sawyer**
**Law Office of Hastings & Ron**

Date: May 12, 2020

_/s/  Natali A. Ron_____
N. ALLEN SAWYER
CHARLES L. HASTINGS
NATALI A. RON
Counsel for Plaintiff
CHRISTINA FUGAZI

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **VERIFICATION**

I, Christina Fugazi, an individual, declare that I have read the foregoing COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND FOR WRIT OF MANDATE and know the contents thereof.  The same is true of my own personal knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 12, 2020, at Stockton, California.

Christina Fugazi

26
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF