ALLEN SAWYER
CA State Bar No.: 173565
ROSENFELD & SAWYER
4578 Feather River Drive, Ste. D
Stockton, CA 95219
(209) 645-0556

CHARLES L. HASTINGS
CA State Bar No.: 88599
NATALI A. RON
CA State Bar No.: 302927
LAW OFFICE OF HASTINGS & RON
4568 Feather River Dr., Ste. A
Stockton, CA 95219
(209) 476-1010

Attorneys for Plaintiff CHRISTINA FUGAZI

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA FUGAZI,<br><br>        Plaintiff,<br><br>v.<br><br>ALEX PADILLA, in his official capacity as Secretary of State for the State of California; MELINDA DUBROFF, in her official capacity of the San Joaquin County Registrar of Voters, and DOES 1 through 50,<br><br>        Defendant. | Case No.: 2:20-CV-00970-KJM-AC<br><br>**EX PARTE APPLICATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION, FOR TEMPORARY RESTRAINING ORDER; ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; SUPPORTING DECLARATION; AND DECLARATION RE NOTICE**<br><br>**[HEARING NOT YET SET]** |

## **APPLICATION**

Plaintiff CHRISTINA FUGAZI, hereby applies for a temporary restraining order and an order to show cause requiring Defendants to show cause why a preliminary injunction should not issue pending trial in this action, enjoining Defendant MELINDA DUBROFF, in her official capacity of the San Joaquin County Registrar of Voters (hereinafter referred to as the "Registrar"), from completing the recount of votes without including the ballots of those voters who elected to Vote-by-Mail, and who submitted verification of their signatures in accordance with the Secretary of State's extension of time to do so, pursuant to a gubernatorial executive order.  Arguendo, Plaintiff CHRISTINA FUGAZI, hereby applies for a temporary restraining order and an order to show cause requiring Defendants to show cause why a preliminary injunction should not issue pending trial in this action, enjoining the Registrar from completing the recount of votes without including the ballots of those voters who elected to Vote-by-Mail, and who submitted verification after the arbitrary election certification but in accordance with the Secretary of State's extension of time to do so, pursuant to a gubernatorial executive order recognizing the Registrar failed to adequately notify said voters that their signatures needed to be cured eight days before the arbitrary certification date.

This application is made pursuant to the provisions of Federal Rules of Civil Procedure, Rule 65, and Elections Code Sections 15100-15112 and 15300-15376, *et seq*., and Government Code section 8567 on the grounds that Registrar is subject to the order of the Governor of California, extending the deadline by which Vote-by-Mail California voters are permitted to submit signatures of unsigned identification envelopes, and to verify their signatures of their identification envelopes which the Registrar rejected and did not tabulate upon her determination that said signatures did not compare to the voter's registration record.  More importantly, even if the Registrar is not mandated by such orders to extend voters' time to verify their signatures, she failed to follow even the general rules of elections for giving adequate notice to voters.

//

////

1   This application is based upon the memorandum in support, the Declaration of Christina
2   Fugazi, the complaint in this action and the accompanying Declaration of Natali A. Ron
3   regarding notice of this application.

4

5   Dated: May 13, 2020                    LAW OFFICE OF
6                                          HASTINGS & RON

7
8                                 By:   __/s/Natali A. Ron_____
                                       NATALI A. RON
9                                       CHARLES L. HASTINGS
                                       ALLEN SAWYER
10                                      Attorneys for Plaintiff CHRISTINA
                                       FUGAZI
11

## I.   **INTRODUCTION**

This case presents the essential instance where a court should enjoin a county elections official from refusing to tabulate all votes of the voters in the recent election resulting in infringement on Constitutional rights and disparate treatment of voters.  A number of voters who elected to exercise their right to vote by mail submitted ballots which the Registrar rejected based on her inability to compare the signature on the identification envelope to voter records, or because of the lack of a signature on the identification envelope.  As explained below, the Registrar prematurely certified the election without affording adequate lawful notice to said Vote-by-Mail voters whose votes the Registrar rejected.  Moreover, the California Governor and Secretary of State both issued orders and memoranda extending the dates by which voters could cure their identification envelopes.  Nevertheless, the Registrar disregarded the extended dates, and unlawfully certified the election prior to the date for voters to cure their ballots-identification signatures.  Because Plaintiff's and other voters' fundamental rights are at issue, any abridgment of these rights, no matter how temporary, constitutes irreparable injury.

### i.   *Vote-By-Mail Irregularities Curing Process*

The Presidential Primary Election was held on March 3, 2020.  Voters are permitted to, and many did, submit their votes by way of a mail-in ballot ("Vote-by-Mail ballots").  Upon receiving Vote-by-Mail ballots, the Registrar is required to confirm the identification envelope is signed, and to compare the voters' signature on the identification envelope containing the ballot with information in the voters' registration records to determine the signature compares.  If the Registrar determines the signature does not compare, or if the envelope is not signed, the Registrar is required to provide notice to all identified voters a minimum of eight days before the certification of the election to afford such voters the opportunity to verify their signatures or sign their envelopes.

Under normal circumstance, if the Registrar determines the signature does not compare to the voter registration records, the Registrar provides timely notice to the voter to allow them time to cure by verifying their signature, and cannot reject a vote if a voter delivers in person, or by mail, fax, or email, a signed verification statement verifying their ballot submission, by 5

p.m. two days prior to the certification of the election, in which case, the Registrar must compare the signatures on the verification statement.

If a voter neglects to sign their identification envelope, the Registrar cannot reject the unsigned Vote-by-Mail ballot if the voter signs the envelope at the Registrar's office by 5 p.m. two days prior to the certification of the election.  Alternatively, a voter can submit an "unsigned ballot statement" on election day before the polls close.

The timeline for voters to cure their unsigned or non-compared signature was extended by executive order, and the Secretary of State's memorandum, to April 21, 2020.  The Registrar failed to timely notify voters to cure their unsigned or non-compared signature as required by statute.

### ii.     *Certification of the Election Process*

Certification generally occurs no later than 30 days following the election, or by April 2, 2020; however, the Governor declared a state of emergency as a result of the threat of COVID-19, and issued an executive order March 20, 2020, extending all deadlines associated with "completing, auditing, and reporting on the official canvass" by 21 days.  The Governor further requested the Secretary of State to issue guidance to the Registrar concerning compliance with the Governor's order.  The Secretary of State did issue its memorandum regarding such compliance.  On March 23, 2020, the Secretary of State's memorandum confirmed the extension dates for all canvass-related deadlines.  Specifically, the Secretary of State extended the Registrar's date to send notices to voters to cure their signatures from March 25, 2020, to April 15, 2020, and extended the voters deadline to cure mismatched signatures or unsigned identification envelopes from March 31, 2020, to April 21, 2020.  Therefore, prior to the voter's deadline to cure their votes, the Registrar had no authority to disregard voter's verifications or their attempts to cure any irregularities with their identification envelopes to ensure their votes were tabulated.

Notwithstanding the Secretary of State's deadlines, the Registrar certified the election on April 5, 2020.  Instead of notifying voters of the dates to cure their signatures set by the Secretary of State, the Registrar hastily mailed notices to some voters, and contacted others by

phone, in her rushed attempt to prematurely certify the election on the arbitrary date of April 5, 2020.  Notwithstanding the Secretary of State's memorandum, the Registrar failed to timely notify voters within the eight (8) days set by the Elections Code.  The false urgency resulted in an egregious violation of many voter's Constitutional rights by frustrating their ability to have their ballot counted properly and included in the totals of votes cast with respect to candidates for public office and ballot measures.

In addition, the Registrar was aware that she had failed to adequately notify voters to cure their unsigned or non-compared signature and instead of correcting the situation chose to arbitrarily certify the election on a Sunday night when she could have taken, and arguably was required to take, the additional time granted by Secretary of State as per the Governor's Executive Order extending the time to certify the election by 21 days.  The Registrar failed to follow the orders set forth in the Governor's order and the Secretary of State's memorandum, to avoid disenfranchising voters and count every valid vote.

### iii.    Other COVID-19 Concerns Hindering Voter's Ability to Cure

Because of growing concerns and statements issued by the Governor and Centers for Disease Control and Prevention, many individuals were fearful of handling received mail and were unable or afraid to leave their houses to go to mailboxes or the post office, for concerns of the possible transmission of the COVID-19 virus via handling documents.  Many individuals therefore did not receive actual notice from the Registrar of their rights prior to the Registrar's April 5, 2020, certification in time to cure by signing a verification or submitting a signature to ensure their vote was not invalidated.

Further frustrating legislative intent and voter's constitutional rights, due to the COVID-19 pandemic, the County Building where the Registrar's office is located on the third floor was closed during the cure period, and people were subject to a State-wide Shelter in Place Order making travel illegal.  Accordingly, those individuals receiving notice that their identification envelope was unsigned could not sign the envelope at the Registrar's office, as required by law.  As well, many voters were unable or afraid to leave their houses to go to mailboxes or the post office to return their verification statements.  All voters whose ballots were rejected by the

Registrar were precluded from delivering their verification in person, disproportionately impacting those individuals who lack access or the ability to utilize electronic means of submission by either facsimile or electronic mail, such as the impoverished, elderly and disabled communities.

Moreover, because of the Registrar's unexplained rush to have the election certified by Sunday, April 5, 2020, she claimed she did not have sufficient time to notify and provide instructions to all voters by mail. Many voters were not timely notified, and did not received correct instructions, as mandated by the Elections Code. Some individuals received a mere phone call ostensibly advising that their votes would not be considered. The Registrar did not document these calls. The Registrar cannot confirm what the voter was told in said phone call. There was no standard script for staff on how they explained to said voter of how they verify their vote. This process can only be described as arbitrary and capricious. Most disconcerting is a voter was not given enough time to verify their vote as required by Elections Code. Information obtainable from the Registrar's website incorrectly advised voters they could submit their verification forms by November 25, 2018, (sic) adding to the confusion of the voting process for anyone who did not receive notification via mail, or anyone who also accessed the conflicting online notification.

Approximately 35 Vote-by-Mail voters submitted their signature verifications to the Registrar by the Secretary of State's April 21, 2020; however, the Registrar refused to process and tabulate the ballots.

      iv.     *Voters Requested The Registrar to Recount the Votes; However, the Registrar Continues to Refuse to Count the Verifications Submitted by April 21, 2020*

Plaintiff lawfully requested the Registrar to recount the votes cast for the office of California State Assembly District 13. This recount allows the Registrar the opportunity to recertify the election if additional valid ballots discovered during the recount process change the results of the election. The very purpose of the recount provisions in the Election Code is to "ascertain the will of the people and to make certain that mistake or fraud has not frustrated the public volition." (*Enterprise Residents Legal Action Against Annexation Com. v. Brennen*

(1978) 22 Cal. 3d. 767, 774; see also *Minor v. Kidder* (1872) 43 Cal. 22, 236 [Without scrutiny of election results, "we can scarcely hope to maintain the integrity of the political system under which we live."].)  However, the Registrar continues to refuse to process any of the ballots of voters who submitted sworn affidavits verifying their signatures in accordance with the Secretary of State deadlines, claiming they were not timely submitted.  The Registrar admitted that she ran out of time and could not mail cure notices to voters giving them an opportunity to verify their vote.  The Registrar had the lawful authority to certify the election later had she taken the additional time granted by Secretary of State as per the Governor's Executive Order extending the time to certify the election by 21 days This Court must cure the Registrar's deprivation of voters' Constitutional rights and uphold the integrity of our electoral process.

## II.    A TEMPORARY RESTRAINING ORDER MAY ISSUE WHERE GREAT AND IRREPARABLE INJURY WILL RESULT TO THE APPLICANT UNLESS THE OFFENDING CONDUCT IS IMMEDIATELY RESTRAINED, AND THERE IS A LIKELIHOOD THE APPLICANT WILL PREVAIL AT TRIAL

A temporary restraining order (TRO) may issue when it appears from the facts shown by affidavit or by the verified complaint that "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" (*Fed. Rules Civ. Proc., rule 65, 28 U.S.C.*) To obtain a temporary restraining order "a party must demonstrate either: (1) probable success on the merits and irreparable injury; or (2) sufficiently serious questions going to the merits to make the case a fair ground for litigation, with the balance of hardships tipping decidedly in favor of the party requesting relief." (*Malama Makua v. Rumsfeld,* (2001) 163 F. Supp. 2d 1202, 1215.)  "The hardship evaluation calls upon the Court to balance competing claims of injury and the effect that a grant or denial of injunctive relief would have on the parties and the public interest." (*Sierra Club v. Penfold,* (1988) 857 F.2d 1307, 1318.)

The granting or denial of a temporary restraining order is discretionary with the trial judge and amounts to a mere preliminary or interlocutory order to keep the subject of the litigation in status quo pending the determination of the action on its merits. (*Gray v. Bybee*,

(1943) 60 Cal. App. 2d 564, 571, 141 P.2d 32.)

As stated in the Declaration of Christina Fugazi, if the Registrar is not immediately restrained and enjoined from recounting the ballots without considering the Vote-by-Mail voter verifications and signatures, Plaintiff, and all other voters, will be harmed by the unlawful election, and is presumed to have suffered great and immediate irreparable harm in that fundamental rights will be abridged as a result of the void vote.

For the reasons herein, a Temporary Restraining Order should be immediately issued to prevent further harm to Plaintiff and all other voters as alleged and as set forth in the attached declarations.

**A. The Court has Authority to Order the Registrar to Tabulate Vote-by-Mail Ballots that Had Unsigned Ballot and Signature Verification Statements Submitted On or Before April 21, 2020**

Pursuant to Code of Civil Procedure Section 1085, a peremptory writ of mandate shall issue in this instance because an egregious neglect of duty has occurred in violation of the Elections Code and/or the California Constitution.  Plaintiff requests the Court to enjoin Respondent from acting due to the fact that *she has not complied with express legislation*.  For a Court to enjoin acts of a public office, the "acts must be such as are without the sanction of a sound law."  (*Financial Indem. Co. v. Superior Court of Los Angeles County* (1955) 45 Cal.2d 395, 402.)  Such is the case here.

A grant of injunctive relief is proper where there is a reasonable probability that the past acts will recur. (See *Colgan v. Leatherman Tool Group* (2006) 135 Cal.App.4th 663, 702 ["Injunctive relief will be denied if, at the time of the order of judgment, there is no reasonable probability that the past acts complained of will recur, i.e., where the defendant voluntarily discontinues the wrongful conduct."].)  Here, the error has already occurred, and is continuing to occur, because the Registrar continues to refuse to tabulate votes which must be tabulated. The Registrar did not give lawful and timely notice to the voters to cure their votes prior to prematurely certifying the election.  The Registrar apparently refuses to rectify this legal error, and an injunction on this basis is proper.

The Registrar acted in violation of the Governor's order, which necessarily must be read in conjunction with the guidance from the Secretary of State specifically requested by such order.  As well, the Registrar acted in violation of the law notwithstanding the Governor and Secretary of State's orders, because she failed to provide statutorily mandated notice to all voters as required by the Elections Code.

The Registrar admitted that she ran out of time and could not mail cure notices and instructions to all voters giving them an opportunity to verify their vote.  The Registrar had the lawful authority to certify the election later had she taken the additional time granted by the Secretary of State as per the Governor's Executive Order extending the time to certify the election by 21 days.  Instead, she violated voters' constitutional rights to Equal Protection, the Federal Voting Rights Act, and the American with Disabilities Act.  The Registrar's notice to Vote-By-Mail voters about their right to cure signatures posted on the County website was in English only, and referenced a November 2018 election, certainly confusing voters about the date by which they could cure their signatures.  (See Request for Judicial Notice, Declaration of Natali A. Ron, ¶1, Exh. 1.)  Likewise, voters could verify signatures in person at the Registrar's Office, as generally allowed by law, because the County Building was closed to the public. This Court must cure the Registrar's deprivation of voters' Constitutional rights and uphold the integrity of our electoral process.

**B.  The Registrar is Required to Comply with the Secretary of State's Extension of Time to Cure Signature**

Government Code section 8567 authorizes the Governor during a declared state of emergency to make, amend, and rescind orders and regulations that have the force of law necessary to carry out a State Emergency Plan.  Governor Gavin Newsom declared a State of Emergency on March 4, 2020, due to the COVID-19 pandemic, and issued Executive Order N-34-20 on March 20, 2020, which extended all deadlines associated with completing, auditing and reporting on the official canvass of the March 3, 2020, Presidential Primary Election by 21 days.  (See Request for Judicial Notice, Declaration of Natali A. Ron, ¶2, Exh. 2.)  The Governor, through said order, further requested the Secretary of State to issue guidance to

county elections officials concerning compliance with said order.  Pursuant to this authority, and the authority of Elections Code section 3026, which provides that the "Secretary of State shall promulgate regulations establishing guidelines for county elections officials relating to the processing of vote by mail ballots," the Secretary of State did in fact issue its Memorandum # 20068, on March 23, 2020, regarding the "March 3, 2020, Presidential Primary Election Canvass Extension."  (See Request for Judicial Notice, Declaration of Natali A. Ron, ¶3, Exh. 3.)

The memorandum states in relevant part: "Vote-By-Mail Ballots – Notice to Cure Mismatched Signature on Identification or Unsigned Identification Envelope – the deadline moves from March 31, 2020, to April 15, 2020."  The memorandum further indicates "Vote-By-Mail Ballots – Deadline to Cure Mismatched Signature on Identification Envelope or Unsigned Identification Envelope – The deadline moves from March 31, 2020, to April 21, 2020."  The Secretary of State published a Primary Election Calendar, advising election officials to "provide to all voters who have been identified as having a signature on the vote-by-mail identification envelope that did not match with their signature on their voter record a notice of the opportunity to verify their signatures no later than 5 p.m. on April 21, 2020," and "voters identified as having failed to sign the vote-by-mail identification envelope a notice of the opportunity to provide a signatures no later than 5 p.m. on April 21, 2020."  (See Request for Judicial Notice, Declaration of Natali A. Ron, ¶4, Exh.4.)  The Registrar neglected her duty to give such notice to the people. Moreover, voters reading the plain text of the Secretary of State's memorandum, and the March 3, 2020, Presidential Election Calendar, would reasonably believe that they had until April 21, 2020, to cure any matters with their signatures on the identification envelopes.

Arguendo, if the certification extension is permissive at the Registrar's discretion, she nevertheless abused her discretion.  The Registrar failed to notify all Vote-By-Mail voters of their right to cure their vote.  The Registrar admitted that she ran out of time and could not mail cure notices to voters giving them an opportunity to verify their vote.  The Registrar had the lawful instruction to certify the election later had she taken the additional time granted by Secretary of State as per the Governor's Executive Order extending the time to certify the

election by 21 days.  The Registrar's instructions to Vote-By-Mail cure rights on her website referenced a November 2018 election.  Likewise, voters could not come down to the Registrar's Office because the County Building was closed to the public.  The Registrar should not exercise her discretion to certify an election when voters will be needlessly deprived of their right to vote.  Disenfranchisement goes against the basic tenants of the Election Vote. This Court must cure the Registrar's deprivation of voters' Constitutional rights and uphold the integrity of our electoral process.

All voters who submitted their verifications or missing signatures in an effort to cure their signature irregularities, by April 21, 2020, must be afforded their right to vote, which the Registrar is refusing them.

**C.** **The Constitution Affords the Right to Vote, Which "Includes All Action Necessary to Make a Vote Effective"**

*a.* *Voting is a Constitutionally Protected Activity, and Includes Having One's Vote Tabulated*

The California Constitution is clear and controlling.  "A voter who casts a vote in an election in accordance with the laws of this state shall have that vote counted." (*Cal. Const. Art. II § 2.5.*)  The Elections Code provides express authority and expands "[f]or purposes of Section 2.5 of Article II of the California Constitution, 'vote' includes all action necessary to make a vote effective in any primary, special, or general election, including, but not limited to, voter registration, any other act prerequisite to voting, casting a ballot, and having the ballot counted properly and included in the appropriate totals of votes cast with respect to candidates for public office and ballot measures." (*Elec. Code § 15702*).  The legislative intent is clear.  The California Constitution requires the Registrar to take all action necessary to ensure that all votes submitted are tabulated.  Instead of following the Secretary of State's mandatory advisement to notify voters of the extended date to cure their votes, she hastily rushed to certification of the election before that date, precluding in excess of 30 voters who did submit their verifications, from voting, i.e. having their vote counted.  By refusing to tabulate the votes of those voters who submitted signature verifications by the Secretary of State's mandated timeline, for no

other reason than her claim the results were untimely, the Registrar infringed upon these voter's Constitutional rights.

In this case, rather than avail herself of the timelines imposed by the Secretary of State or the Elections Code, if necessary, the Registrar rushed the ballot tabulation to preclude voters from submitting their verifications.

The Registrar failed to notify all Vote-By-Mail voters of their right to cure their vote. The Registrar stated that she ran out of time and could not mail cure notices to voters giving them an opportunity to verify their vote. Yet, the Registrar had the lawful authority to certify the election later had she taken the additional time granted by Secretary of State as per the Governor's Executive Order extending the time to certify the election by 21 days. Moreover, the Registrar's notice to Vote-By-Mail voters of their cure rights on her website referenced a November 2018 election, adding to voter confusion as whether voters could cure any signature issues on their vote-by-mail ballot. Likewise, voters could not come down to the Registrar's Office because the County Building was closed to the public. The Registrar should not exercise her discretion to certify an election when voters will be needlessly deprived of their right to vote.

   *b.   The Error of Rejecting Voters' Lawful Votes is Cause to Contest the Election*

It is sufficient cause to contest an election if eligible voters who attempted to vote in accordance with the laws of the state were denied their right to vote, if the precinct board in conducting the election or in canvassing the returns, made errors sufficient to change the result of the election as to any person who has been declared elected, or if there was an error in the vote–counting programs or summation of ballot counts. (*Elec. Code §16100 subds. (e), (f), and (g)*.) As is clear from the failure to comply with the Secretary of State memorandum, the precinct board made errors in the tabulation by refusing to consider timely signature verifications. According to the Registrar's Final Official Results for Assembly District 13, Kathy Miller received only 30 votes more than Christina Fugazi, receiving respectively 24,091 and 24,061 votes. (See Request for Judicial Notice, Declaration of Natali A. Ron, ¶5, Ex. 5.) So far during the recount, which is ongoing, the Registrar found 8 more votes for Christina

Fugazi bringing Miller's lead down to 22.  This recount allows the Registrar the opportunity to recertify the election if additional valid ballots discovered during the recount process change the results of the election.  The Registrar's refusal to tabulate the votes of those Vote-by-Mail voters who submitted timely signature verifications, would have changed the result as to the person who was declared elected over Plaintiff.  (See Declaration of Allen Sawyer, and the Verified Complaint on file.)  This error in the vote-counting process is sufficient cause to contest the election.

       *c.*   *Secretary of State's Memorandum was Mandatory and the Failure to Comply Vitiates the Election*

In this case, the failure to follow the Secretary of State's guidelines altered the results of the elections, and ultimately, the rights of the voters have been injuriously affected.  The Registrar will argue she was not bound by the Secretary of State's memorandum.  The case of *Rideout v. Los Angeles* (1921) 185 Cal. 426, is illustrative of this point:

> A distinction has been developed between mandatory and directory provisions in election laws; a violation of a mandatory provision vitiates the election, whereas a departure from a directory provision does not render the election void if there is a substantial observance of the law and no showing that the result of the election has been changed or the rights of the voters injuriously affected by the deviation. (*Citations*.)  Whether or not a provision, the observance of which is not expressly declared by law to be essential to the validity of the election, is mandatory or merely directory, depends upon the character of the act prescribed.  If the act enjoined goes to the substance or necessarily affects the merits or results of the election, it is mandatory; otherwise directory.

(*Rideout v. Los Angeles* (1921) 185 Cal. 426, 430-431.)

The case of *Rideout* is still sound authority for determining whether the Governor's executive order and the Secretary of State's memorandum should be taken as mandatory or discretionary.  Clearly the deadline by which voters can exercise their lawful voting rights to ensure their votes are counted, substantively and necessarily affect the merits of the election.  Thus the Secretary of State's memorandum read in conjunction with the Governor's order, should be taken as mandatory.  Even if it were discretionary, the failure to comply altered the results of the elections, and injuriously affected voters' rights. The Registrar's refusal to follow such mandatory guidelines invalidates the election.

### D.  <u>The Registrar Violated Equal Protection and Voting Rights Provisions of the State Constitution. (Art. I, § 7, subd. (a); Art. II, § 2.)</u>

The mere fact that the Registrar chose to mail some individuals notice of her rejection of their ballots and their right to cure, and to contact others by telephone, claiming she did not have time to mail them their notices prior to the rushed certification date, constitutes unequal protection.  The Registrar's election process during the novel Corona virus outbreak, effectively precluded a number of minority, elderly, and disabled voters from voting, because the Registrar's notices of the requirement to submit verification of signatures prior to the hastily scheduled certification date prejudices voters, who did not have access to electronic methods of submitting their verifications since they were precluded from doing so due to the closure of the Registrar's office.  Indeed elderly, low-income, and disabled people who are unable to utilize or access electronic methods of verification submission were unable to submit their signature verifications due to the closure of the Registrar's office, and any and all other individuals who were sheltering in place in accordance with the Governor's orders who for any physical reason could not access electronic notices and submit their verification, were precluded from ensuring their votes were tabulated.

### E.  <u>The Registrar's Electoral System Effectively Abridges a Protected Class's Opportunity to Elect Candidates</u>

The right to vote is fundamental. (*Board of Supervisors v. Local Agency Formation Com.* (1992) 3 Cal.4th 903, 913; *Peterson v. City of San Diego* (1983) 34 Cal.3d 225, 229.)  The state equal protection clause quite naturally applies to voting-related issues. (*Citizens Against Forced Annexation v. Local Agency Formation Com.* (1982) 32 Cal.3d 816, 829, overruled on other grounds in *Board of Supervisors v. Local Agency Formation Com., supra*, 3 Cal.4th at p. 921.)  California decisions involving voting issues quite closely follow federal Fourteenth Amendment.  The California Voting Rights Act of 2001 was enacted to implement the equal protection and voting guarantees of article I, section 7, subdivision (a) and article II, section 2. due to the closure of the County Registrar's office, voters were precluded from delivering their verifications.  Accordingly, members of public who do not have access to electronic means of

obtaining a verification, and submitting their verification, were effectively precluded from ensuring their votes are counted.

In the case at bar, the refusal of the County Registrar to adhere to the State's Executive Order extending statutory deadlines to cure unverified ballots effectively precluded low-income individuals, non-English speaking individuals, elderly individuals, and disabled individuals, from ensuring the verification of their votes, and thereby impairing the ability of such a protected class to elect the candidate of their choice.

## III. THE COURT SHOULD ISSUE A PRELIMINARY INJUNCTION PROHIBITING THE CONCLUSION OF THE RECOUNT WITHOUT CONSIDERING VERIFIED VOTE-BY-MAIL SIGNATURES

The issuance of an injunction is appropriate "[w]hen it appears by the complaint or affidavits that the commission or continuance of some act during the litigation would produce waste, or great or irreparable injury, to a party to the action." (*Code of Civ. Proc. § 526 (a)(2)*.) The moving party must establish: (1) a likelihood of success on the merits; and (2) that the interim harm it will suffer if the injunction is denied outweighs the harm that the non-moving party will suffer if the injunction issues. (*Ketchens v. Reiner*, (1987) 194 Cal. App. 3d 470, 474.) The purpose of a preliminary injunction is "to preserve the status quo, or prevent irreparable harm pending a trial on the merits." (Weil, Robert I., 2 California Practice Guide: Civil Procedure Before Trial, § 9:558 (Rutter Group, 2009); *King v. Meese*, (1987) 43 Cal. 3d 1217, 1227 (whether status quo is preserved is critical factor in deciding wither preliminary injunction should issue).) Here, if the recount is not conducting meaningfully, and is concluded without consideration of the lawful votes which the Registrar cannot lawfully reject from the tabulation, the integrity of the electoral process will be completely impinged. This Court is permitted to issue an injunction, precluding the conclusion of the recount until all votes have been considered, and enter a protective order in the interim.

### A. Plaintiff Will Prevail on the Merits

The Registrar failed to comply with orders from the Secretary of State to give voters notice that their identification envelope could be verified by April 21, 2020. In addition to

neglecting her duty to give such note, she disregarded the Secretary of State's timeline, and certified the election prior to the voter's deadline to submit their verifications.

**B.** **Plaintiff Will Suffer Irreparable Injury If the Registrar is Allowed to Proceed without Tabulating all Lawfully Submitted Votes Since Fundamental Rights are at Issue**

Irreparable harm is presumed when a Plaintiff's fundamental, constitutional rights are threatened. (*See, e.g., Ketchens*, at 480 ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); citing *Elrod v. Burns*, (1971) 424 U.S. 347, 373; *American Booksellers Assn., Inc. v. Superior Ct.* (*City of Paramount*), (1982) 129 Cal. App. 3d 197, 206 (threat of loss of fundamental rights constitutes irreparable harm).)

Here, Plaintiff's fundamental rights are at issue. (*See Sanchez v. City of Modesto*, (2006) 145 Cal. App. 4th 660, 686 (the right to vote is a fundamental right on par with other First Amendment rights).) Specifically, the Registrar is on the brink of finalizing the recount and election process that was not voted on by all the voters, nor in the manner prescribed by Secretary of State and California Election Code election procedures. (*See Elec. Code §3019.*) This illegal act threatens to subvert the democratic process established in the California Constitution and in the Elections Code.

## IV.    CONCLUSION

The Registrar neglected her duties to notify voters of the continued time to submit verification of their votes as set forth by the Secretary of State, and disregarded those time lines by prematurely certifying the election. Moreover, the Registrar failed to give appropriate notice in the mandatory language required by Elections Code section 3019. Under the law, the Registrar cannot tabulate nor conclude the recount process without meaningfully conducting said process, by including all votes that were lawfully and timely submitted. For these reasons, Plaintiff respectfully requests that the Court issue a temporary restraining order and order to show cause regarding a preliminary injunction enjoining the Registrar from neglecting her duties to give lawful notice, and from concluding the recount without having done so.

Dated: May 13, 2020

LAW OFFICE OF
HASTINGS & RON


By:___/s/Natali A. Ron_____
NATALI A. RON
CHARLES L. HASTINGS
ALLEN SAWYER
Attorneys for Plaintiff
CHRISTINA FUGAZI

**DECLARATION RE: NOTICE**

I, Natali A. Ron, declare as follows:

1.      I am an attorney, licensed to practice law in and before all Courts of the State of California. I am an attorney for the Plaintiff, CHRISTINA FUGAZI, an individual.  I have personal knowledge of the matters set forth herein, and if called upon to testify, I could and would competently, accurately, and truthfully testify hereto.

2.      I contacted Erin Sakata, of the San Joaquin County Counsel's office, on May 13, 2020, at 3:27 p.m., to advise of the relief requested by this application.  I requested that Defendant Dubroff stipulate to a temporary restraining order, pending a hearing on a motion for a preliminary injunction. I have not received a response from her.  Due to the continuing harm my client is suffering, as more fully set forth in the Declaration of Christina Fugazi filed herewith, and the exorbitant daily costs of the pending recount, it is necessary that this matter be heard on an expedited basis and it cannot be heard on the general law and motion calendar of this Court.  I advised Ms. Sakata that a hearing on the matter would be held in United States District Court for the Eastern District of California on the immediate assignment of a date by the judge's clerk.  I advised Ms. Sakata I would send her copies of our moving papers via email, and that any opposition must be filed within 48 hours, pursuant to judge Kimberly J. Mueller's Civil Standing Orders.

3.      On May 13, 2020, at 3:57 p.m., co-counsel for Ms. Fugazi, Allen Sawyer, copied me on the notification to Allen R. Anderson, Jr., an attorney in the Secretary of State Office, Senior Elections Counsel, advising of the relief requested by this application.  Mr. Sawyer requested that Defendant Padilla stipulate to a temporary restraining order, pending a hearing on a motion for a preliminary injunction.  I requested that counsel notify me if counsel would so stipulate, or to advise if opposition would be filed.  I have not received a response from counsel. Due to the continuing harm my client is suffering, as more fully set forth in the Declaration of Christin Fugazi, this application will be filed pending a response.  If a response is received, I will notify the court as soon as possible.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 13th day of May, 2020, at Stockton, California.

By:_____/s/Natali A. Ron_____
Natali A. Ron

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF SAN JOAQUIN

I am a resident of the county aforesaid, I am over the age of eighteen years and not a party to the within entitled action; my business address is 4568 Feather River Drive, Suite A, Stockton, California, 95219.

On May 13, 2020, I served the attached **EX PARTE APPLICATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION, FOR TEMPORARY RESTRAINING ORDER; ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; SUPPORTING DECLARATION; AND DECLARATION RE NOTICE,** on the parties listed below by delivering a *true copy* as follows:

**[X]**      **(Electronic mail)** By placing a *true copy* thereof enclosed in a sealed envelope(s) with postage thereon, fully prepaid for first class mail, on the date specified below, in the United States mail at Stockton, California addressed as follows:

**[ ]**      **(Facsimile)** By sending a *true copy,* via telephone facsimile transmission, to the number(s) listed below:

**[ ]**      **(Personal Hand Delivery)** By placing *true copy* in a sealed envelope and causing such envelope to be delivered to the address(es) listed below:

**[ ]**      **(Federal Express)** By placing a *true copy* in a sealed Federal Express package and causing said package to be delivered for overnight service to the address(es) listed below:

Erin Sakata
County Counsel
44 North San Joaquin Street, Sixth Floor, Suite 679,
Stockton, CA 95202
esakata@sjgov.org

Allen R. Anderson, Jr.,
Senior Elections Counsel
1500 11th Street, Fifth Floor
Sacramento, CA  95814
aanderso@sos.ca.gov

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 13, 2020, at Stockton, California.

          _____*/s/Natali A. Ron*_____
          NATALI A. RON

EX PARTE APPLICATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION, FOR TEMPORARY RESTRAINING ORDER; ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; SUPPORTING DECLARATION; AND DECLARATION RE NOTICE