UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA FUGAZI, et al., | No. 2:20-cv-00970-KJM-AC |
| Plaintiffs, | |
| v. | ORDER |
| ALEX PADILLA, et al., | |
| Defendants. | |

On May 19, 2020, the court heard argument by videoconference on nonparty Kathy Miller's *ex parte* application to be joined as defendant, or in the alternative to intervene. Appl., ECF No. 7. Plaintiffs opposed. Opp'n, ECF No. 17. The court now GRANTS the motion.

I. BACKGROUND

1. Factual Background

Broadly speaking, this lawsuit concerns the San Joaquin County Presidential Primary Election (the "primary") held on March 3, 2020. Compl. ¶ 6. The facts relevant to the instant application are as follows. Plaintiff Christina Fugazi ("Fugazi") was a candidate for Assembly in the race for California Assembly District 13. *Id.* ¶ 22. The first- and second- place finishers advance to the general election; Fugazi was the third-place finisher. *Id.* Fugazi was informed and believed as of the date she filed her complaint only 22 votes separated Fugazi and

1

Kathy Miller, the second-place finisher. On April 10, 2020, Fugazi requested a recount, which at the time of hearing remains ongoing.

The other plaintiffs ("voter plaintiffs") are various individuals who voted in the primary by mail. *Id.* ¶ 23. The San Joaquin Registrar of Voters, Melinda Dubroff (the "Registrar") determined the voter plaintiffs' mail-in-ballots had deficiencies with respect to the signature requirement. *Id.* These plaintiffs allege the Registrar failed to notify them of their right to cure their signatures and have their ballots counted in accordance with the California Elections Code as modified by an executive order issued by the Governor extending deadlines for county elections officials in light of the coronavirus (COVID-19) pandemic. *Id.* ¶¶ 16, 17, 20, 23. They also allege the Registrar prematurely certified the election, shortening the deadline to cure their signatures, leading to their disenfranchisement. *Id.* ¶¶ 16–17.

Plaintiffs complaint lists four causes of action flowing from their alleged injury: 1. A claim based on the First and Fourteenth Amendments of the U.S. Constitution; 2. Violation of the federal Voting Rights Act; 3. Procedural and substantive due process; and 4. Violation of the Americans with Disabilities Act.

Plaintiffs complain and move for a temporary restraining order barring the Registrar from completing the ongoing recount without counting their ballots.

2. Procedural Background

Christina Fugazi filed a petition for a writ of mandate in San Joaquin County Superior Court on April 27, 2020 to bar the Registrar from completing the recount without counting vote-by-mail votes cured between April 3 and April 21. Applicants' Req. Judicial Notice ("RJN") Ex. A, ECF No. 12. She also filed an *ex parte* temporary restraining order application there. RJN Ex. B. Miller was not named as a defendant in that action. Miller sought to be joined as party to the state court suit and applied ex parte to be joined or intervene. Woocher Decl. ¶ 7. After the Superior Court specially set a hearing for Miller's application to precede the hearing on the state TRO, Fugazi agreed to file an Amended Petition naming Miller as a real party in interest. *Id.* At hearing before this court, Fugazi's counsel clarified that while
/////

1  Fugazi agreed to naming Miller in this way, she did so with a reservation of rights and without
2  conceding Miller's right to be joined in that proceeding.

3  Plaintiffs filed their suit in this court on May 12, 2020, naming as defendants Alex
4  Padilla in his official capacity as the California Secretary of State and Melinda Dubroff in her
5  official capacity.  Compl.  On May 13, 2020, they moved ex parte for a temporary restraining
6  order.  Appl. TRO.  On May 15, Kathy Miller moved to be joined as a defendant or intervene.
7  Appl.  Plaintiffs oppose.  Opp'n, ECF No. 17.  As noted above, the court heard argument on the
8  application on May 19, 2020, in conjunction with argument on plaintiffs' application for a TRO.

9  II.    LEGAL STANDARD

10  Under Federal Rule of Civil Procedure 19, persons "subject to service of process
11  and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a
12  party if […] that person claims an interest relating to the subject of the action and is so situated
13  that disposing of the action in the person's absence may […] as a practical matter impair or
14  impede the person's ability to protect the interests."  Fed. R. Civ. P. 19(a)(1)(B(i).  "If a person
15  has not been joined as required, the court must order that the person be made a party."  Fed. R.
16  Civ. P. 19(a)(2).

17  "There is no precise formula for determining whether a particular non-party is
18  necessary to an action," and "[t]he determination is heavily influenced by the facts and
19  circumstances of each case."  *Confed. Tribes of Chehalis Indian Reservation v. Lujan*, 928 F.2d
20  1496, 1498 (9th Cir. 1991) (citation and quotation marks omitted).  The "interest relating to the
21  subject of the action" contemplated under Rule 19 is not limited to a narrowly defined legal
22  interest and is determined from a practical perspective rather than on the basis of technicalities.
23  *Aguilar v. Los Angeles Cty.*, 751 F.2d 1089, 1093 (9th Cir. 1985) (citing *Provident Tradesmen's*
24  *Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110 (1968)).

25  III.   DISCUSSION

26  Kathy Miller's ability to protect her interests would be impaired if at this point she
27  were not joined to this action.  "[T]he rights of voters and the rights of candidates do not lend
28  themselves to neat separation; laws that affect candidates always have at least some theoretical,

3

1   correlative effect on voters." *Bullock v. Carter*, 405 U.S. 134, 143 (1972).  Several other circuits
2   have recognized the standing of candidates to represent the rights of their voters.  *See, e.g.,*
3   *Mancuso v. Taft*, 476 F.2d 187, 190 (1st Cir. 1973) ("A candidate for public office […] is so
4   closely related to and dependent on those who wish to vote for him and his litigation will so
5   vitally affect their rights that courts will relax the rule of practice […] and will permit a candidate
6   to raise the constitutional rights of voters." (citations omitted).); *see also Bay Cty. Democratic*
7   *Party v. Land*, 347 F.Supp.2d 404, 422 (E.D. Mich. 2004) ("Moreover, political parties and
8   candidates have standing to represent the rights of voters.") (citations omitted).

9         As the second-place candidate for the Assembly race, it appears Miller has as
10  much of a legally protected interest in the subject of the litigation as does Fugazi.  Even accepting
11  plaintiffs' argument that their TRO request is essentially focused on ensuring the protection of
12  their constitutional right to vote in the abstract, regardless of the result, their suit raises the
13  concrete possibility Fugazi could displace Miller, assume second place and advance to the general
14  election if all of the disputed ballots are counted.  Insofar as Fugazi can assert the interest of her
15  voters in having their votes counted on their behalf, so too can Miller assert her voters' interests
16  in having their candidate advanced through the counting of their votes.

17        Even without a claim that their rights have been violated, the voter plaintiffs have
18  an interest in the accurate administration of the election.  Court recognize voters' interest in
19  expressing their choice of candidate without that expression of choice being diluted or distorted
20  by improperly cast votes.  *See Anderson v. United States*, 417 U.S. 211, 226 (1974) (discussing
21  injury to voters' right against dilution proscribed by federal ballot-stuffing statute) (citing *United*
22  *States v. Saylor*, 322 U.S. 385, 386 (1944)); *see also Prichard v. United States*, 181 F.2d 326, 331
23  (6th Cir. 1950) (discussing right of anti-dilution as "a right or privilege secured to [the voter] by
24  the laws and Constitution of the United States.").  Whoever is the eventual winner of the primary
25  election at issue here has an interest in ensuring the result is a legitimate expression of the will of
26  the voters.

27        Because this action seeks only the inclusion of the disputed ballots in a larger
28  recount, the results of which are uncertain, there is no guarantee a favorable litigation result will

put Fugazi instead of Miller in second place. But that does not matter to the question of joinder. The Registrar certified Miller as the second-place finisher, and the instant litigation imposes a risk, not otherwise present, that result will be undone. The risk is sufficient for this court to find that litigating the case in Miller's absence will impede her ability and that of her voters to protect her interest as a practical matter.

IV. CONCLUSION

For the foregoing reasons, the court ORDERS plaintiffs to join Kathy Miller as a defendant under Federal Rule of Civil Procedure 19(a)(2).

IT IS SO ORDERED.

DATED: May 19, 2020.

CHIEF UNITED STATES DISTRICT JUDGE