J. Mark Myles, Esq. (S.B. No. 200823)
SAN JOAQUIN COUNTY COUNSEL
Kristen Hegge, Esq. (S.B. No. 125210)
CHIEF DEPUTY COUNTY COUNSEL
Erin Sakata, Esq. (S.B. No. 290118)
DEPUTY COUNTY COUNSEL
44 North San Joaquin Street
Sixth Floor, Suite 679
Stockton, California 95202

NIELSEN MERKSAMER
   PARRINELLO GROSS & LEONI LLP
   Christopher E. Skinnell, Esq. (S.B. No. 227093)
   Hilary J. Gibson, Esq. (S.B. No. 287862)
   David J. Lazarus, Esq. (S.B. No. 304352)
2350 Kerner Boulevard, Suite 250
San Rafael, California 94941
Telephone: (415) 389-6800
Facsimile:  (415) 388-6874
Email: cskinnell@nmgovlaw.com
Email: hgibson@nmgovlaw.com
Email: dlazarus@nmgovlaw.com

*Attorneys for Defendant*
MELINDA DUBROFF
*San Joaquin County Registrar of Voters*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA FUGAZI, *et al.*, <br><br>    *Plaintiffs,* <br><br> vs. <br><br> ALEX PADILLA, in his official capacity as Secretary of State for the State of California; MELINDA DUBROFF, in her official capacity of the San Joaquin County Registrar of Voters, and DOES 1 through 50, <br><br>    *Defendants.* | Case #2:20-cv-00970-KJM-AC <br><br> **DEFENDANT REGISTRAR'S NOTICE OF MOTION & MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; POINTS & AUTHORITIES IN SUPPORT THEREOF [FRCP 12(b)(1) & (b)(6)]** <br><br> JUDGE: Hon. Kimberley J. Mueller <br> HEARING DATE: Sept. 25, 2020 <br> TIME: 10:00 a.m. |

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION & MOTION.................................................................. 10

MEMORANDUM OF POINTS & AUTHORITIES ...................................... 11

I.    INTRODUCTION ............................................................................ 11

II.   MOTION TO DISMISS FOR LACK OF JURISDICTION (FRCP 12(B)(1))............................................................................. 13

    A.    Standard of Review ........................................................ 13

    B.    Plaintiffs Lack Standing to Bring Claims Based on Hypothetical Harms to Other Voters, Who Are Not Parties to This Action, That Plaintiffs Did Not Suffer Themselves ...................................................................... 13

        1.    Plaintiff Voters lack standing to assert claims for theoretical harm to other, non-plaintiff voters .................................................................. 14

        2.    Class allegations do not create standing to challenge alleged practices from which Plaintiffs themselves suffered no harm ............................ 15

        3.    Plaintiff Fugazi also lacks standing as a candidate to assert claims for theoretical harm to other, non-plaintiff voters ................................. 16

    C.    As to the Harms They Allegedly Did Suffer Themselves, Plaintiffs' Claims Are Moot ...................................... 18

        1.    This Court has already held that any claim for relief in conjunction with the March primary is moot .................................................................... 18

        2.    Plaintiffs' claims for declaratory and prospective injunctive relief in connection with the November election are not entitled to go forward under the "capable of repetition yet evading review" exception ................................... 19

III.  PLAINTIFFS HAVE ALSO FAILED TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED (FRCP 12(B)(6))................. 21

A.    Standard of Review ........................................................... 21

B.    Even Taken at Face Value, Plaintiffs' Allegations
      Fail to Establish, As a Matter of Law, That They
      Have Suffered a Violation of Due Process ..................................... 23

C.    Plaintiffs Have Not Alleged a Violation of Equal
      Protection ......................................................................... 26

D.    Plaintiffs Have Not Alleged a Violation of Any
      Federal Statute ............................................................. 27

      1.    Section 2 of the Voting Rights Act ..................................... 27

      2.    Americans    with    Disabilities    Act    and
            Rehabilitation Act ................................................... 29

      3.    Section 8 of the National Voter Registration
            Act .......................................................................... 30

IV.    CONCLUSION ............................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Holder,*
    673 F.3d 1089 (9th Cir. 2012)....................................................................25

*Arellano v. Santos,*
    2020 U.S. Dist. LEXIS 46143 (S.D. Cal. Mar. 16, 2020) ...........................22

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...........................................................................22, 24

*Barr v. Galvin,*
    626 F.3d 99 (1st Cir. 2010) .........................................................................19

*Bay Cty. Democratic Party v. Land,*
    347 F. Supp. 2d 404 (E.D. Mich. 2004).......................................................16

*Bishop v. Bartlett,*
    575 F.3d 419 (4th Cir. 2009) .......................................................................15

*Bullock v. Carter,*
    406 U.S. 134 (1972)...............................................................................16, 17

*Cal. Council of the Blind v. County of Alameda,*
    985 F. Supp. 2d 1229 (N.D. Cal. 2013).......................................................29

*Carrico v. City & Cty. of S.F.,*
    2009 U.S. Dist. LEXIS 69154 (N.D. Cal. Aug. 7, 2009)............................23

*Castillo v. Does,*
    2016 U.S. Dist. LEXIS 129018 (M.D. Penn. Sept. 20, 2016).....................24

*City of Cleburne v. Cleburne Living Ctr.,*
    473 U.S. 432 (1985)......................................................................................27

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983)........................................................................................19

*Conley v. Hess,*
    2020 U.S. Dist. LEXIS 83206 (W.D. Mich. May 12, 2020) .......................24

*Coto Settlement v. Eisenberg,*
    593 F.3d 1031 (9th Cir. 2010)......................................................................22

*Daniels-Hall v. Nat'l Educ. Ass'n,*
   629 F.3d 992 (9th Cir. 2010) ................................................................................ 22

*Duran v. Lollis,*
   2019 U.S. Dist. LEXIS 71114 (E.D. Cal. Apr. 25, 2019) .......................................... 23

*Dyer v. Maryland State Bd. of Educ.,*
   187 F. Supp. 3d 599 (D. Md. 2016), *aff'd*, 685 Fed. Appx. 261 (4th Cir.
   2017) ...................................................................................................................... 14

*Friends of the Earth v. Laidlaw Envtl. Servs. (TOC),*
   528 U.S. 167 (2000) ......................................................................................... 13, 14

*Fugazi v. Padilla,*
   2020 U.S. Dist. LEXIS 89020 (E.D. Cal. May 19, 2020) .......................................... 16

*Get Outdoors II, LLC v. City of San Diego,*
   506 F.3d 886 (9th Cir. 2007) ............................................................................... 14

*Gill v. Whitford,*
   138 S. Ct. 1916 (U.S. 2018) ................................................................................ 14

*Golden v. Zwickler,*
   394 U.S. 103 (1969) ............................................................................................ 19

*Greater Birmingham Ministries v. Alabama,*
   161 F. Supp. 3d 1104 (N.D. Ala. 2016) ............................................................... 15

*Hall v. Sec'y, State of Alabama,*
   902 F.3d 1294 (11th Cir. 2018) ........................................................................... 20

*Hollingsworth v. Perry,*
   570 U.S. 693 (2013) ....................................................................................... 14, 17

*Honig v. Doe,*
   484 U.S. 305 (1988) ............................................................................................ 20

*Illinois State Bd. of Elect. v. Socialist Workers Party,*
   440 U.S. 173 (1979) ............................................................................................ 19

*Intercept Pharms., Inc. v. Howard,*
   615 Fed. Appx. 42 (2d Cir. 2015) ....................................................................... 24

*Jarvis v. Regan,*
   933 F.2d 149 (9th Cir. 1987) .............................................................................. 19

*Kocontes v. Orange Cty. Sheriff's Dep't,*
2019 U.S. Dist. LEXIS 187654 (C.D. Cal. Oct. 29, 2019) ........................................ 24

*Koller v. Harris,*
312 F. Supp. 3d 814 (N.D. Cal. 2018) ................................................................... 19, 20

*La Rose v. Northampton Cty. & Lehigh Cty.,*
2017 U.S. Dist. LEXIS 173010 (E.D. Pa. Oct. 19, 2017) ........................................ 17

*Lemons v. Bradbury,*
538 F.3d 1098 (9th Cir. 2008) ............................................................................ 26

*Lewis v. Casey,*
518 U.S. 343 (1996) ........................................................................................ 13, 16

*Lopez v. Merced County,*
473 F. Supp. 2d 1072 (E.D. Cal. 2007) .............................................................. 14

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ........................................................................................ 15

*Mack v. South Bay Beer Distribs.,*
798 F.2d 1279 (9th Cir. 1986) ............................................................................ 21

*Mancuso v. Taft,*
476 F.2d 187 (1st Cir. 1973) ............................................................................ 16

*Moran v. Wells Fargo Bank, N.A.,*
2012 U.S. Dist. LEXIS 108813 (D. Nev. Aug. 3, 2012) ........................................ 22

*Mullane v. Central Hanover Bank & Trust Co.,*
339 U.S. 306 (1950) ........................................................................................ 25

*Mullis v. U.S. Bankruptcy Court,*
828 F.2d 1385 (9th Cir. 1987) ............................................................................ 21

*Murphy v. Hunt,*
455 U.S. 478 (1982) (per curiam) ...................................................................... 19

*Neitzke v. Williams,*
490 U.S. 319 (1989) ........................................................................................ 21

*Nolles v. State Comm. for Reorganization of Sch. Districts,*
524 F.3d 892 (8th Cir. 2008) ............................................................................ 21

*In re Plains All Am. Pipeline, L.P.,*
245 F. Supp. 3d 870 (S.D. Tex. 2017) ................................................................ 16

*Powers v. Ohio,*
    499 U.S. 400 (1991) ................................................................. 15

*Roberts v. Wamser,*
    883 F.2d 617 (8th Cir. 1989) .................................................... 29

*Romero v. Pomona,*
    883 F.2d 1418 (9th Cir. 1989) .................................................. 28

*Silber v. Mabon,*
    18 F.3d 1449 (9th Cir. 1994) .................................................... 25

*Simon v. Eastern Ky. Welfare Rights Organization,*
    426 U.S. 26 (1976) ................................................................. 16

*Smith v. Pac. Props. and Dev. Corp.,*
    358 F.3d 1097 (9th Cir. 2004) .................................................. 14

*Smith v. Salt River Project Agric. Improvement & Power Dist.,*
    109 F.3d 586 (9th Cir. 1997) .................................................... 28

*Somers v. S.C. State Election Comm'n,*
    871 F. Supp. 2d 490 (D.S.C. 2012) ........................................... 17

*Soules v. Kauaians for Nukolii Campaign Comm.,*
    849 F.2d 1176 (9th Cir. 1988) ............................................ 12, 23

*Sprague v. Cortes,*
    223 F. Supp. 3d 248 (M.D. Pa. 2016) ....................................... 14

*St. Clair v. City of Chico,*
    880 F.2d 199 (9th Cir. 1989) .................................................... 13

*Stein v. Cortés,*
    223 F. Supp. 3d 423 (E.D. Pa. 2016) .................................. 17, 18

*Tulsa Prof'l Collection Servs., Inc. v. Pope,*
    485 U.S. 478 (1988) ............................................................... 25

*United States v. Hays,*
    515 U.S. 737 (1995) ............................................................... 14

*United States v. Juvenile Male,*
    564 U.S. 932 (2011) (per curiam) ....................................... 12, 19

*United States v. Ritchie,*
    342 F.3d 903 (9th Cir. 2003) ............................................. 22, 25

*United States v. Silva-Arzeta,*
  602 F.3d 1208 (10th Cir. 2010) ................................................................26

*Vallejo v. City of Tucson,*
  2009 U.S. Dist. LEXIS 54442 (D. Ariz. June 26, 2009) ...........................23

*Van Wie v. Pataki,*
  267 F.3d 109 (2d Cir. 2001) .....................................................................20

*Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.,*
  114 F.3d 976 (9th Cir. 1997) ....................................................................29

*White v. Lee,*
  227 F.3d 1214 (9th Cir. 2000) ..................................................................13

**Constitutional Authorities**

U.S. Const. art. III ..........................................................................13, 15

U.S. Const. amend. I (First Amendment) ...................................................14

U.S. Const. amend. XIV (Due Process & Equal Protection)........................*passim*

**Statutes**

42 U.S.C. § 1983 ...........................................................................................12

Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* ..........27, 29, 30

Cal. Elec. Code § 3019......................................................................................30

Cal. Elec. Code § 3019(d)(7) ...........................................................................21

Cal. Elec. Code § 15632 ...................................................................................18

Federal Voting Rights Act, 52 U.S.C. § 10101 *et seq.* .................27, 28, 29

Help America Vote Act .....................................................................................16

National Voter Registration Act, Section 8, 52 U.S.C. § 20507 ........27, 30

Rehabilitation Act of 1973 ...........................................................27, 29, 30

**Other Authorities**

Fed. R. Civ. Proc. 11.................................................................................27

Fed. R. Civ. Proc. 12(b)(1) .............................................................. 10, 11, 13

Fed. R. Civ. Proc. 12(b)(6) ................................................................. *passim*

Fed. R. Civ. Proc. 23.................................................................................15

USPS, "Continuity of Operations Update" (Mar. 19, 2020), *available
    online at* https://about.usps.com/newsroom/service-alerts/pdf/usps-
    continuity-of-operations-03-19-2020.pdf (last visited July 16, 2020) .................22

## **NOTICE OF MOTION & MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on Friday, September 25, 2020, at 10:00 a.m., or as soon thereafter as the parties may be heard, Defendant MELINDA DUBROFF will move this Court, at the United States Courthouse located at 501 I Street, Sacramento, California, 95814, Courtroom #3 (15th Floor), for an order dismissing the First Amended Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(1) and (b)(6), on the grounds that:

1. Plaintiffs lack standing to challenge alleged election irregularities from which they did not personally suffer harm (FRCP 12(b)(1));

2. The claims for which Plaintiffs do have standing are moot (FRCP 12(b)(1)); and

3. All of the claims contained in the FAC fail to state a claim on which relief can be granted (FRPC 12(b)(6)).

This motion is based on the following documents: this Notice of Motion and the attached Points & Authorities; and all the other papers, documents, or exhibits on file or to be filed in this action, and the argument to be made at any hearing on the motion ordered by the Court.

This motion is made following the conference of counsel. Counsel below sent a detailed e-mail laying out Defendant's position as set forth herein to Plaintiff's counsel on July 17. The parties engaged in follow-up meet-and-confer communications, in the form of more detailed e-mails, over the course of the two days following.

Dated:  July 21, 2020

Respectfully submitted,

NIELSEN MERKSAMER
PARRINELLO GROSS & LEONI LLP

By:   /s/    Christopher E. Skinnell
Christopher E. Skinnell

*Attorneys for Defendant*
MELINDA DUBROFF

<u>**MEMORANDUM OF POINTS & AUTHORITIES**</u>

**I.      <u>INTRODUCTION</u>.**

The First Amended Complaint should be dismissed without leave to amend.

For one thing, Plaintiffs lack standing to challenge most of the alleged irregularities identified in the FAC. They take a "kitchen sink" approach, alleging a hodge-podge of purported claims relating to the March primary that fall into two categories: (1) irregularities that supposedly caused Plaintiffs themselves harm at the March primary, and (2) irregularities that might *hypothetically* have affected *other* voters. As an example of the latter, Plaintiffs complain about purportedly misleading signage on the dropbox at the Registrar's office, *see* FAC ¶¶ 13 & 118, but there is no allegation in the FAC, nor is there a contention in any of the declarations that were previously submitted and that are incorporated into the FAC,[1] that any Plaintiff in this case was actually misled by that signage and prevented from submitting a timely cure as a result. Instead, the insinuation is that some other, unspecified voters might hypothetically have been. Likewise, Plaintiffs do not allege that they (as opposed to other hypothetical voters) actually believed, in reliance on the Governor's executive order, that the deadline for submitting their "cures" was April 21; that they (as opposed to other hypothetical voters) were actually confused or misled by the outdated notice on the Registrar's website; that they (as opposed to other hypothetical voters) were unable to call the Registrar's office to obtain information or that they did so and received incorrect information; that they (as opposed to other hypothetical voters) were prevented from curing by the closure of County offices, etc.

Under the Supreme Court's standing case law, Plaintiffs cannot bring claims based on harms to other voters that they did not suffer themselves—especially hypothetical claims—and the class allegations do not change that. Nor does Ms.

---

[1] *See* FAC (ECF #41), p. 4 n.1. *See also* Sections II.A and III.A, *infra*, regarding the permissibility of taking these declarations into account in connection with a motion to dismiss under Rules 12(b)(1) and (b)(6).

1  Fugazi's status as a candidate enable her to bring these claims, as discussed below.

2      As for the harms that Plaintiffs themselves purportedly suffered, the FAC and
3  incorporated declarations allege an inability to have their defective vote-by-mail
4  ballots "cured" because (1) they received a notice to cure their defective signatures but
5  did not seek to do so; (2) they received a notice to cure and sent it back, but it was not
6  received by the Registrar's office; or (3) they did not receive a notice to cure. Claims
7  based on these "harms" are the only ones that Plaintiffs have standing to challenge.

8      Those claims are moot, however. As regards Plaintiffs' ongoing effort to have
9  the March election recertified and Ms. Fugazi advanced to the November election, this
10 Court has already held as much, directing that her remedy is in the state courts, not
11 this Court. *See* Tr. of 6/8/2020 Hearing (ECF #43), p. 13:11-14. And as to relief
12 pertaining to future elections, there is no "reasonable expectation that the same
13 complaining party will be subject to the same action again." *United States v. Juvenile*
14 *Male*, 564 U.S. 932, 938 (2011) (per curiam) (internal quotation marks, citation, and
15 alterations omitted). For these Plaintiffs to face the same constellation of factors in
16 November that led to their ballots being rejected in March is far too speculative to fit
17 within the well-defined parameters of the "capable of repetition, yet evading review"
18 exception to the mootness doctrine.

19     Finally, Plaintiffs fail to state a claim on the merits, at least as to any violation
20 of federal law. At best, even accepting all the FAC's allegations as true solely for
21 purposes of this motion, the allegations amount to technical violations of state law
22 and the type of "garden variety" irregularities that the Ninth Circuit has cautioned
23 are not appropriate for the federal courts to police, rather than the sort of
24 "fundamental unfairness" that justifies a claim under § 1983. *See Soules v. Kauaians*
25 *for Nukolii Campaign Comm.*, 849 F.2d 1176, 1183-84 (9th Cir. 1988). Nor have
26 Plaintiffs adequately alleged any violation of equal protection or a federal statute.

27     In sum, despite its prolixity the FAC does not assert any claims that are
28 appropriate for relief in this Court, and it should be dismissed with prejudice.

## II.     MOTION TO DISMISS FOR LACK OF JURISDICTION (FRCP 12(B)(1)).

### A.     Standard of Review.

"Because standing and mootness both pertain to a federal court's subject-matter jurisdiction under Article III, they are properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) ...." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "Unlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). Thus, the Court may consider the entire record of proceedings in this case to date in connection with the standing and mootness challenges asserted herein.

### B.     Plaintiffs Lack Standing to Bring Claims Based on Hypothetical Harms to Other Voters, Who Are Not Parties to This Action, That Plaintiffs Did Not Suffer Themselves.

As already noted above, with respect to many of the various alleged irregularities cited in the First Amended Complaint there are no allegations that *these Plaintiffs* were affected by these irregularities or injured thereby. Rather, they claim that *other* voters may hypothetically have been affected by these purported irregularities. In other words, Plaintiffs seek to assert speculative harms to other voters who are not parties to this action. This, they may not do. They lack standing to seek redress for alleged harms that they were not, themselves, subjected to.[2]

---

[2] Plaintiffs must demonstrate standing separately for each type of injury and form of relief sought. *See Friends of the Earth v. Laidlaw Envtl. Servs. (TOC)*, 528 U.S. 167, 185 (2000); *see also Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("[S]tanding is not dispensed in gross."). Thus, even if Plaintiffs herein have standing to raise issues concerning the counting of vote-by-mail ballots that lack matching signatures (without acknowledging that those issues have any merit), that does not mean they have standing to raise every conceivable election irregularity at the March election, regardless of whether they, themselves, were affected by that purported irregularity.

### 1.   Plaintiff Voters lack standing to assert claims for theoretical harm to other, non-plaintiff voters.

"It is a 'fundamental restriction on [federal courts'] authority' that '[i]n the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.'" *Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013) (quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991)). In the context of elections cases, the Supreme Court has "long recognized that a person's right to vote is 'individual and personal in nature,'" *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (U.S. 2018) (quoting *Reynolds v. Sims*, 277 U.S. 533, 561 (1964)), and "[t]hus, 'voters who allege facts showing disadvantage to themselves as individuals have standing to sue' to remedy that disadvantage." *Gill,* 138 S. Ct at 1929 (quoting *Baker v. Carr*, 369 U.S. 186, 206 (1962)). On the other hand, a voter "has no standing to assert the rights of … 'voters' generally." *Dyer v. Maryland State Bd. of Educ.*, 187 F. Supp. 3d 599, 610 (D. Md. 2016), *aff'd*, 685 Fed. Appx. 261 (4th Cir. 2017).[3]

"There are 'certain, limited exceptions' to th[e] rule" that a party may not assert the rights of third parties, *Hollingsworth*, 570 U.S. at 708, but none apply here. As relevant to this case,[4] a litigant seeking to assert the rights of a third party must satisfy three interrelated criteria: "The litigant must have suffered an injury in fact,

---

[3] *See also United States v. Hays*, 515 U.S. 737, 745-76 (1995) (plaintiff who did not live in allegedly unconstitutional voting district lacked standing to bring claim challenging said district); *Lopez v. Merced County*, 473 F. Supp. 2d 1072, 1079-80 (E.D. Cal. 2007) (three-judge court) (voters living in one city in a county could not challenge alleged illegalities in county's administration of another city's elections); *Sprague v. Cortes*, 223 F. Supp. 3d 248, 281 (M.D. Pa. 2016) ("Plaintiffs' first ground as a basis for standing is entirely without merit. No plaintiff alleges that he misunderstood the ballot question or was misled by the Secretary's language, only that other voters were and did…. Plaintiffs cannot bring a claim on behalf of voters who are clearly not similarly situated to them in this key respect.").

[4] No Plaintiff in this case is an association or organization, so there is no basis for a claim of associational or organizational standing, *see Friends of the Earth, Inc.*, 528 U.S. at 181; *Smith v. Pac. Props. and Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004), and none of the claims implicate the narrow exception for First Amendment overbreadth claims, *see Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 891 (9th Cir. 2007) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973)).

---

thus giving him or her a sufficiently concrete interest in the outcome of the issue in dispute; the litigant must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect his or her own interests." *Powers*, 499 U.S. at 411 (internal quotation marks and citations omitted).

Specifically, Plaintiffs have shown no close relationship with other voters who may have been affected by the asserted irregularities, nor have they demonstrated any inability on the part of those other voters to pursue an action in their own name. *See Greater Birmingham Ministries v. Alabama*, 161 F. Supp. 3d 1104, 1115 (N.D. Ala. 2016) (denying plaintiffs third party standing to assert the rights of other voters who lacked photo IDs on this basis).

And beyond that, Plaintiffs have not alleged that any other voter was actually affected by many of the alleged irregularities—only that they could be. This, too, undermines Plaintiffs' standing, because Article III standing requires a showing of injury in fact that is "'actual or imminent, not "conjectural" or "hypothetical[.]"'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)); *see also Bishop v. Bartlett*, 575 F.3d 419, 424 (4th Cir. 2009) (allegation that voter pamphlet contained that was "potentially misleading" to other voters did not confer standing on plaintiffs who did not claim to have been misled).

## 2. Class allegations do not create standing to challenge alleged practices from which Plaintiffs themselves suffered no harm.

The FAC also contains a series of allegations purporting to assert class status under FRCP 23. But because they have not themselves been subjected to the miscellaneous irregularities alleged relating to the dropbox, office closure, online notices, etc., Plaintiffs lack standing to raise these claims as class representatives as well. "If the plaintiff has individual standing to assert a claim, she may do so on behalf of a class of persons similarly situated. If she does not have individual standing to assert a claim, she may not do so even if she meets the other Rule 23(a)

requirements." *In re Plains All Am. Pipeline, L.P.*, 245 F. Supp. 3d 870, 932 (S.D. Tex. 2017). That is because "'a plaintiff who has been subject to injurious conduct of one kind [does not] possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.'" *Lewis*, 518 U.S. at 358 n.6 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982)).[5]

### 3. Plaintiff Fugazi also lacks standing as a candidate to assert claims for theoretical harm to other, non-plaintiff voters.

Finally, the County is aware that some cases "[s]everal other circuits have recognized the standing of candidates to represent the rights of their voters," *Fugazi v. Padilla*, 2020 U.S. Dist. LEXIS 89020, *6 (E.D. Cal. May 19, 2020), but that is not universally true.[6] The typical case in which candidates are allowed to assert the rights of voters are challenges to candidacy qualification laws—laws that threaten to harm the candidate him- or herself *as a candidate*, such as laws that would keep him or her off the ballot. *See Bullock v. Carter*, 406 U.S. 134 (1972) (candidate filing fee); *Mancuso v. Taft*, 476 F.2d 187 (1st Cir. 1973) (candidate had standing to challenge provision that barred him from simultaneously running for office and holding a civil service position).[7] While there is no fundamental right to be a candidate, *Bullock*, 406

---

[5] *See also Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 40 n.20 (1976) ("That a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'") (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)); *Lewis*, 518 U.S. at 358 (illiterate prisoner could seek relief on his own behalf, but lacked standing to represent a class consisting of non-English speakers, prisoners in lockdown, or the inmate population at large).

[6] Of course, as discussed further below, *see* Section II.C.1, Ms. Fugazi will not be a candidate at the November election, at which the remaining claims for relief are directed.

[7] Another case cited by this Court in *Fugazi*, 2020 U.S. Dist. LEXIS 89020, for the proposition that a candidate may assert the rights of voters was *Bay Cty. Democratic Party v. Land*, 347 F. Supp. 2d 404 (E.D. Mich. 2004). That case was not a challenge to a candidacy qualification requirement—it related to the counting of ballots under the Help America Vote Act—and it did contain language that candidates have standing to assert voters' rights. *Id.* at 422. However, no plaintiff in that case was actually a candidate; all were political parties or associations (the NAACP, ACORN and Project Vote) that were able to establish associational standing, *id.* at 410-111 & 421-22, unlike the voters in this case, *see* note 4, *supra*.

---

1  U.S. at 143, the harm to the voters' associational rights still causes an injury to the

2  candidate *as a candidate* in such cases. In such circumstances, the rights of

3  candidates and the rights of voters "do not lend themselves to neat separation." *Id.*

4        On the other hand, the Supreme Court has admonished that "even when [it

5  has] allowed litigants to assert the interests of others, the litigants themselves still

6  'must have suffered an injury in fact, thus giving [them] a sufficiently concrete

7  interest in the outcome of the issue in dispute.'" *Hollingsworth*, 570 U.S. at 708

8  (quoting *Powers*, 499 U.S. at 411) (internal quotation marks omitted). And, again, the

9  harm in question must be actual and imminent, not hypothetical or conjectural.

10       Consistent with these rules, the appropriate distinction to be drawn is between

11  a candidate who asserts voters' rights where the violation will nevertheless impact

12  that candidate *qua* candidate and cases where there is no such harm to the candidate

13  as such or any such harm is purely speculative.

14       Thus, in *Somers v. S.C. State Election Comm'n*, 871 F. Supp. 2d 490 (D.S.C.

15  2012), it was alleged that the printing of dual ballots for state and federal elections

16  might harm some overseas voters, but the plaintiff was held to lack standing to

17  challenge that practice because she "failed to show that she was or will be injured *as a*

18  *candidate*." *Id.* at 496 (emphasis added).

19       Likewise, in *La Rose v. Northampton Cty. & Lehigh Cty.*, 2017 U.S. Dist.

20  LEXIS 173010 (E.D. Pa. Oct. 19, 2017), the court held that a candidate lacked

21  standing to challenge an age restriction on voting, even though the complaint alleged

22  that "literate minors" were the candidate's "voting bloc," because he had not "pleaded

23  any facts in support of his belief that, if literate twelve to eighteen year-olds with at

24  least a sixth-grade education were permitted to vote, they would vote for him." *Id.* at

25  *4. Thus, any harm to him as a candidate was purely speculative. *Id.*

26       And in *Stein v. Cortés*, 223 F. Supp. 3d 423 (E.D. Pa. 2016), a candidate was

27  held to lack standing to raise voters' rights to ensure that electronic voting machines

28  were not hacked when (1) the claim of hacking was speculative and (2) there was no

1   allegation that the result affected her vote total in any event. *Id.* at 431-34.

2       Here, there is no reason to assume—and it is not alleged—that the non-

3   Plaintiff voters who *may* have been affected by the various irregularities in March

4   2020 were Ms. Fugazi's voters, *i.e.*, that their votes would have counted for her as

5   opposed to other candidates. Thus, there is no non-speculative basis for believing she

6   was harmed *as a candidate* by the irregularities in question, and she therefore lacks

7   standing to bring these claims in that capacity.

8   **C.**    **As to the Harms They Allegedly Did Suffer Themselves,**
9           **Plaintiffs' Claims Are Moot.**

10     **1.**    **This Court has already held that any claim for relief in**
11            **conjunction with the March primary is moot.**

12       The FAC continues to ask that this Court compel the Registrar to count

13   Plaintiffs' votes at the March primary, and a handful of other votes identified during

14   the abortive recount, and re-certify the results so that Ms. Fugazi can advance to the

15   November general election. *See* FAC at ¶¶ 48, 80-81, 97. But as this Court is well-

16   aware, Ms. Fugazi abandoned her recount before it was completed, and it was

17   terminated in accordance with state law. *See* Tr. of 6/8/2020 Hearing (ECF #43), p.

18   3:24-25; FAC (ECF #41), p. 37 ¶ 2 (recount was "discontinued"). State law further

19   precludes Ms. Dubroff from changing the results certified on April 5 to reflect only

20   *some* new ballots; a full recount is required for any change to take place. *See* Cal. Elec.

21   Code § 15632 (recount that does not completely recount all ballots is "null and void").

22   Thus, in connection with Plaintiffs' motion for a preliminary injunction, this Court

23   correctly held that any further claims for relief with respect to that election were

24   moot, and that Plaintiffs' "path under the law is through the California Elections

25   Code to seek a post recount election contest under election code section I think it's

26   16101(d)." Tr. of 6/8/2020 Hearing (ECF #43), p. 13:11-14.

27

28

2.  **Plaintiffs' claims for declaratory and prospective injunctive relief in connection with the November election are not entitled to go forward under the "capable of repetition yet evading review" exception.**

Plaintiffs also seek prospective relief, apparently under the recognized exception to the mootness doctrine for controversies that are "capable of repetition, yet evading review." *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). But "[t]his exception is a narrow one, and applies only in exceptional situations," *Jarvis v. Regan*, 933 F.2d 149, 154 (9th Cir. 1987)*,* where (1) "the challenged action is in its duration too short to be fully litigated prior to cessation or expiration"; and (2) "there is a *reasonable expectation* that the *same complaining party* will be subject to the same action again." *United States v. Juvenile Male*, 564 U.S. at 938 (emphasis added).

Though election law cases often will meet this test, "not every election case fits within [the exception's] four corners," *Barr v. Galvin*, 626 F.3d 99, 105 (1st Cir. 2010). This is primarily because not all will meet the second prong, which requires that "a plaintiff must demonstrate 'a real and immediate threat that he would again' suffer the injury to have standing for prospective equitable relief." *Lyons*, 461 U.S. at 105. Importantly, the Supreme Court "has never held that a mere physical or theoretical possibility was sufficient to satisfy the [capable of repetition prong]. If this were true, virtually any matter of short duration would be reviewable. Rather, [it has] said that there must be a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party." *Murphy v. Hunt*, 455 U.S. 478, 482-83 (1982) (per curiam). *See also Illinois State Bd. of Elect. v. Socialist Workers Party*, 440 U.S. 173, 187-88 (1979) ("conclusory assertions that the actions are capable of repetition are not sufficient to satisfy the" test); *Golden v. Zwickler*, 394 U.S. 103, 109 (1969) (ordering dismissal of declaratory relief action where there was insufficient "immediacy and reality" that plaintiff would again face the contested act).

A recent example in the election context can be found in *Koller v. Harris*, 312 F. Supp. 3d 814 (N.D. Cal. 2018), where the court held moot a challenge to California's

"unfaithful elector" law, which compels members of the Electoral College to vote for the candidate of their party. The plaintiff had served as a Democratic Party elector in 2016 but wished to vote for someone other than Hillary Clinton and Tim Kaine. The Court held that it was not a case that fell into the "capable of repetition, yet evading review" exception, because there were too many unpredictable steps that would have to occur for the plaintiff to find himself in the same scenario again: "it is unknown whether Plaintiff will serve as an elector in 2020, unknown who will be the Republican candidate for President, unknown which candidate will be expected to win the Electoral College, and unknown which party's candidate will win the California popular vote. Therefore, the allegation that Plaintiff will be eligible to serve as a Presidential Elector in 2020 is not enough." *Id.* at 825. *See also Van Wie v. Pataki*, 267 F.3d 109, 115 (2d Cir. 2001) (equal protection claim challenging different registration deadlines to vote in party primaries for new voters vs. re-registering voters were moot, because "mere theoretical possibility" that the plaintiffs might be subject to the challenged policy again did "not establish 'a reasonable expectation' that they will again be subjected to the same dispute."); *Hall v. Sec'y, State of Alabama*, 902 F.3d 1294 (11th Cir. 2018) (special elections for vacant U.S. House seats were sufficiently unusual that challenge to ballot access law specific to such elections was not reasonably "capable of repetition" with respect to plaintiff).

In this case, a number of stars would have to align for Plaintiffs to again suffer the same harms in November as they claim to have suffered in March, all of which make the "capable of repetition" prong unduly speculative: Plaintiffs would have to again vote-by-mail *and* again fail to sign their vote-by-mail envelopes or sign in a manner that does not match their voter registration,[8] even though in the latter case their registrations would have been updated to reflect the new signature on their

---

[8] As to the likelihood that Plaintiffs would again append a defective signature to their vote-by-mail ballot, the Supreme Court has been "unwilling to assume that the party seeking relief will repeat the type of misconduct that would once again place him or her at risk of that injury." *Honig v. Doe*, 484 U.S. 305, 320 (1988).

belated "cure" letters[9]; they would then have to not receive cure notices or receive them and try unsuccessfully to return them, only to have them lost in the mail. And, to the extent their complaint is Ms. Dubroff's failure to delay certification, Governor Newsom would have to issue another emergency order affecting election canvassing timelines, *and* it would have to be materially similar to the order issued in connection with the March election, even though the situation in March was very different (the emergency having arisen after the election took place, rather than months in advance, when contingency planning would be possible). The risk that in November Plaintiffs will again face the unusual constellation of circumstances that precluded their votes from being counted in March is too theoretical to be "capable of repetition" within the meaning of the case law applying the mootness exception.

## III.   PLAINTIFFS HAVE ALSO FAILED TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED (FRCP 12(B)(6)).[10]

### A.   Standard of Review.

Under FRCP 12(b)(6), a motion to dismiss is properly granted if one or more causes of action in the complaint fail to state a claim as a matter of law. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). In ruling on a motion under Rule 12(b)(6), the Court may consider facts that may be judicially noticed, *Mullis v. U.S. Bankruptcy Court*, 828 F.2d 1385, 1388 (9th Cir. 1987), and matters of public record, including pleadings, orders, and other papers filed with the court. *Mack v. South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986). While the factual allegations of a

---

[9] *See* Cal. Elec. Code § 3019(d)(7) ("If the elections official determines that the signatures compare, the official shall use the signature in the signature verification statement, even if returned untimely, to update the voter's signature for future elections.").

[10] The County renews its contention that Plaintiffs' claims are really state law claims, and that this Court should decline to exercise supplemental jurisdiction over them. *See* Registrar's Oppo. to Motion for TRO (ECF #10), pp. 11-13 (citing 28 U.S.C. § 1367(c) and *Colorado River Water Conserv. Dist v. United States*, 424 U.S. 800 (1976)). "Election law, as it pertains to state and local elections, is for the most part a preserve that lies within the exclusive competence of the state courts." *Nolles v. State Comm. for Reorganization of Sch. Districts*, 524 F.3d 892, 898 (8th Cir. 2008) (quoting *Bonas v. Town of N. Smithfield*, 265 F.3d 69, 74 (1st Cir. 2001)).

---

complaint are generally accepted as true, the Court is "not, however, required to accept as true allegations that contradict . . . matters properly subject to judicial notice ...." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Additionally, the Supreme Court has held that factual allegations of wrong-doing must be "plausible," rather than merely "conceivable" or "speculative" to survive:

> [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. [Citation]. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. [Citation].  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 & 570 (2007), & Fed. R. Civ. Proc. 8(a)(2)) (cursory allegations of "invidious discrimination" were not sufficiently "plausible" to avoid dismissal under FRCP 12(b)(6)). *See also* USPS, "Continuity of Operations Update" (Mar. 19, 2020), *available online at* https://about.usps.com/newsroom/service-alerts/pdf/usps-continuity-of-operations-03-19-2020.pdf (last visited July 16, 2020) (U.S. Mail has been an "essential service" since the beginning of the shelter-in-place).

Finally, a court may consider documents incorporated by reference in the complaint. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). *See also Moran v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 108813, *21 (D. Nev. Aug. 3, 2012) (considering declaration incorporated into complaint); *Arellano v. Santos*, 2020 U.S. Dist. LEXIS 46143, *9 n.1 (S.D. Cal. Mar. 16, 2020) (same). "[T]he district court may treat [an incorporated] document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Plaintiffs incorporate the declarations and exhibits on file in this case into the FAC (*see* p. 4, n.1).

**B.     Even Taken at Face Value, Plaintiffs' Allegations Fail to Establish, As a Matter of Law, That They Have Suffered a Violation of Due Process.**

The Ninth Circuit has admonished, in that federal law "does not provide a right of action for 'garden variety election irregularities,'" *Soules*, 849 F.2d at 1183, and—especially pertinent in light of the harms Plaintiffs claim to have suffered in March—that court has further held that "*[t]he federal courts are not 'the arbiter[s] of disputes over ... alleged irregularities in the transmission and handling of absentee voter ballots*,'" *id.* at 1184 (emphasis added). It elaborated thus:

> "Elections are, regrettably, not always free from error. Voting machines malfunction, registrars fail to follow instructions, absentee ballots are improperly administered, poll workers become over-zealous, and defeated candidates are, perhaps understandably, inclined to view these multifarious opportunities for human error in a less than charitable light." Nonetheless, "were we to embrace plaintiffs' theory, this court would henceforth be thrust into the details of virtually every election, tinkering with the state's election machinery, reviewing petitions, election cards, vote tallies, and certificates of election for all manner of error and insufficiency under state and federal law." This we will not do.

*Id.* (internal citations omitted). Applying this standard, due process challenges to election irregularities are regularly dismissed in 12(b)(6) motions. *See e.g., Duran v. Lollis*, 2019 U.S. Dist. LEXIS 71114 (E.D. Cal. Apr. 25, 2019); *Carrico v. City & Cty. of S.F.*, 2009 U.S. Dist. LEXIS 69154, at *4 (N.D. Cal. Aug. 7, 2009); *Vallejo v. City of Tucson*, 2009 U.S. Dist. LEXIS 54442, at *3 (D. Ariz. June 26, 2009) ("the alleged facts formulate nothing more than a garden variety election irregularity with no hint of intentional discrimination either in this individual instance or election-wide. The Court grants Defendants' Rule 12(b)(6) motion to dismiss.")

Even taking the declarations previously submitted and the allegations of the FAC at face value, they do not establish a violation of due process. Most charitably interpreted, they establish that two Plaintiffs received notice and did nothing in response (Laing and Elizabeth Lawrence); three Plaintiffs received notice and tried to

cure through the mail but the cure notice was not received by the Registrar's office (Macias, Berry, and Leanos); and six Plaintiffs (Lopez, Gonzalez, Singh, Marshall, Naveed, and Zimmer) did not receive cure notices (out of nearly 1,600 sent). They do not allege that notices were sent to the wrong addresses; that any Plaintiff actually relied upon the Governor's order or was unable to discern the deadline for submitting a cure notice; that any Plaintiff was actually misled or confused by the fact that the online version of the notice specified a deadline in November 2018; that any Plaintiff actually attempted to go to the Registrar's office to cure but was unable to do so due to office closures; that Plaintiffs were unable to obtain relevant information by phone or received incorrect information; etc. Simply put, this case—again, taking the declarations at face value—boils down to a handful of cases of lost mail.

Plaintiffs allege that the failure of some them to receive notice, or of Ms. Dubroff's office to receive cures purportedly sent by other voters, "*could be* an indication of a disruption of mail service during the COVID-19 pandemic or a disruption in mail processes at the Registrar's Office." *See* FAC (ECF #41), ¶ 33 (emphasis added). But such these allegations are insufficiently "plausible" within the meaning of *Iqbal*, as opposed to merely "conceivable" or "speculative," to survive a Rule 12(b)(6) motion. *See, e.g., Kocontes v. Orange Cty. Sheriff's Dep't*, 2019 U.S. Dist. LEXIS 187654, *10-11 (C.D. Cal. Oct. 29, 2019) ("allegations that 'legal mail' was lost or delayed that are unsupported by specific factual allegations are conclusory.").[11]

Plaintiffs also allege that Registrar Dubroff did not send timely cure notices to all voters entitled to them. But nine of the twenty declarant voters in this action admit to having received the notices. Moreover, all Plaintiffs—and all other

---

[11] *See also Conley v. Hess*, 2020 U.S. Dist. LEXIS 83206, *15-16 (W.D. Mich. May 12, 2020) (dismissing prisoner's claim that defendant "disrupted his outgoing mail" as too speculative and conclusory to survive motion to dismiss); *Castillo v. Does*, 2016 U.S. Dist. LEXIS 129018, *17-18 (M.D. Penn. Sept. 20, 2016) (same); *Intercept Pharms., Inc. v. Howard*, 615 Fed. Appx. 42, 43 (2d Cir. 2015) (breach of contract claim dismissed where plaintiff speculated that "[p]erhaps" the check he mailed in satisfaction of his own obligations under the contract was "lost, misplaced or mishandled").

declarants, for that matter—appear on the official log of 1,585 voters who were sent notices by Dubroff's office.[12] That log shows that—at least with respect to all of the Plaintiffs in this action—they *were* sent notices at least eight days before the certification, as required by state law. Thus, even accepting as true (solely for purposes of this motion), the allegation that Ms. Dubroff did not send *some* voters timely notice as required by state law, Plaintiffs are again asserting harms to third parties they did not themselves suffer.

Lastly, nineteen declarants (all except Jamar Berry) assert that that they did not receive a phone call from the Registrar's office about the fact that that there was a defect in their signature. However, as this Court has noted, the premise that due process requires such phone calls to be made at all remains "a proposition for which plaintiff[s] offer[] no supporting authority." *See* Order Denying Temporary Restraining Order (ECF #27), p. 17:21-21. The Supreme Court has frequently said that, under most circumstances, notice sent by ordinary mail is deemed reasonably calculated to inform interested parties that their rights are in jeopardy. *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 490 (1988); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 319 (1950). The mails are an "efficient and inexpensive means of communication" that generally may be relied upon to deliver notice where it is sent. *Mullane*, 339 U.S. at 319.

Ultimately, the alleged injuries that Plaintiffs suffered do not rise to the level of a due process violation. Lost mail is not a constitutional violation. *Cf. Silber v. Mabon*, 18 F.3d 1449, 1451 (9th Cir. 1994) (class member's "due process rights were

---

[12] That log may be considered in connection with this motion. It was originally submitted by, and relied upon by, Plaintiffs themselves, *see* ECF #16-1 and ECF #16, p. 6 (citing the log for the premise that cure notices sent closer to the election were more likely to be cured). It is incorporated by reference into the complaint, *see* FAC (ECF #41) p. 4 n.1, and its accuracy may therefore be assumed for purposes of this motion, *see Ritchie*, 342 F.3d at 908. And, as a certified public record, *see* ECF #24, ¶ 4, it is judicially noticeable. *See Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) (courts "may take judicial notice of 'records and reports of administrative bodies.'").

1    not violated even though he did not actually receive notice of the settlement and opt

2    out date in time to opt out before the deadline.").

3    As for the implicit claim that California's procedures for permitting voters to

4    cure defective VBM ballots are constitutionally inadequate, *see* FAC (ECF #41), ¶ 115,

5    as the Registrar's office detailed in its surreply opposing the TRO (*see* ECF #23, pp. 9-

6    10), those procedures the most generous in the entire country; historically, few states

7    allowed such curing, and even now the majority of states provide no option for *post-*

8    *election* curing at all. It cannot be the case that due process compels what currently

9    amounts to best practices, much less something greater. *See United States v. Silva-*

10   *Arzeta*, 602 F.3d 1208, 1216 (10th Cir. 2010) ("Although [policy document and cases]

11   suggest what 'best practice' may be, due process does not require so much.").

12   "'States retain the power to regulate their own elections,' and "'as a practical

13   matter, there must be a substantial regulation of elections if they are to be fair and

14   honest and if some sort of order, rather than chaos, is to accompany the democratic

15   processes.'" *Lemons v. Bradbury*, 538 F.3d 1098, 1103 (9th Cir. 2008) (quoting

16   *Burdick v. Takushi*, 504 U.S. 428, 433 (1992)). Barring a severe burden, which is not

17   present here, a reasonable regulation of voting practices must be upheld. That

18   includes the practices at issue here. *Cf. id.* (state had weighty interests in detecting

19   fraud and the orderly administration of elections, which outweighed the "minimal"

20   burden of rejecting defective signatures on referendum petitions that without

21   providing signers individual notices and an opportunity to cure the defects).

22   **C.    Plaintiffs Have Not Alleged a Violation of Equal Protection.**

23   Insofar as Plaintiffs seem to seek to allege a violation of equal protection, those

24   claims would appear to be (1) that several "cures" were accepted on April 4 or 5,

25   though the deadline was April 3 (*see* FAC ¶ 16), and (2) 21 "lost" votes that were

26   discovered in a box for unused ballots during the recount were subsequently counted

27   (FAC ¶ 34). In other words, the theory seems to be that some votes were counted late,

28   so equal protection requires that the Plaintiffs' be counted late as well.

As to the first scenario, the equal protection clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Even accepting the allegations as true for purposes of this motion,[13] Plaintiffs are not situated similarly to those other "late" cures. Those cures—of necessity—were received in advance of the April 5 certification of the results; Plaintiffs' cures were not received until almost three weeks after certification was final, and after a recount had been commenced.

As to the second claim, Plaintiffs do not allege that the 21 "lost" ballots were not timely cast, or properly cast. And, in any event, they were not counted. They were discovered during the recount (*see* FAC, ¶ 34), and because Ms. Fugazi abandoned that recount no change to the April 5 certification ended up taking place after all.

### D.   Plaintiffs Have Not Alleged a Violation of Any Federal Statute.

Though only two of the four causes of assert violations of federal statutes—the Second Claim for Relief (federal Voting Rights Act, 52 U.S.C. § 10101 *et seq.*) and the Fourth Claim for Relief (Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*), the caption also refers to Section 8 of the National Voter Registration Act and Paragraphs 128-129 of the FAC assert a violation of the Rehabilitation Act of 1973. No violation of these statutes is adequately alleged either.

#### 1.   Section 2 of the Voting Rights Act.

As to the alleged violations of the Voting Rights Act, Plaintiff has not alleged facts to establish that the vote-by-mail ballots rejected by Registrar Dubroff were rejected "on account of race." At most, they demonstrate that Plaintiffs herein are

---

[13] The County would note, however, that this allegation—like many others—has been comprehensively refuted by Ms. Dubroff's prior sworn testimony, *see* ECF #24, ¶ 7, and ECF #37-1, ¶ 26, and it seems questionable whether continuing to include it in the Complaint conforms to Plaintiffs' obligations under Rule 11(b) not to present frivolous claims "without any factual basis or justification," Fed. R. Civ. Proc. 11, Adv. Cmte. Note (1993), and to advance only "allegations and other factual contentions [that] have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. Proc. 11(b)(3).

---

disproportionately (though not exclusively) minorities, but "a bare statistical showing of disproportionate impact on a racial minority does not satisfy the [Section] 2 'results' inquiry." *Smith v. Salt River Project Agric. Improvement & Power Dist.*, 109 F.3d 586, 595 (9th Cir. 1997). "Instead, 'section 2 plaintiffs must show a causal connection between the challenged voting practice and [a] prohibited discriminatory result.'" *Id*. Here, the causal connection is lacking. The policy that Plaintiffs contend violated the Voting Rights Act was the failure to delay certification of the election results, *see* FAC ¶¶ 98-108, but the FAC and corresponding declarations contains no allegation that any of the minority Plaintiffs were unable to respond to cure their votes as a result of that failure to delay. Their inability to cure was attributable, instead, to failure to receive a cure notice or non-receipt of the cure notice by the Registrar's office. But there is no reason to believe that waiting any longer would have remedied either problem.[14]

As an independent defect, Plaintiffs also must—but have not—alleged that the minority class has the requisite political "cohesion" required to state a claim under the Act, and the hurdle that they must meet is especially high here, where the list of voters contained in Paragraph 49 of the FAC identify as a whole bunch of different races and ethnicities. *See Romero v. Pomona*, 883 F.2d 1418, 1421 (9th Cir. 1989) (affirming dismissal of Section 2 claim where plaintiffs failed to show multiracial plaintiff group "comprised a politically cohesive group").

Finally, Ms. Fugazi has not alleged that *she* is a member of a protected class that was adversely affected, and she lacks standing to bring a Section 2 claim in her

---

[14] Though Plaintiffs allegedly submitted their "cure" letters on April 21, the last day of the extended period permitted by the Governor, the FAC makes clear that the Plaintiffs only discovered that their votes were not being counted because Ms. Fugazi discovered that to be the case as part of the recount. *See* FAC ¶ 33 ("It was only then"—upon being "contacted by the Christina Fugazi campaign during the recount"—that Plaintiffs "learned their ballots had not been cured by their previous cure efforts."). If Ms. Dubroff had waited the full time, the recount would not have started until after the April 21 deadline had expired, and Plaintiffs' votes still would not have been counted.

---

capacity as a candidate. *See Roberts v. Wamser*, 883 F.2d 617 (8th Cir. 1989) (unsuccessful candidate's Voting Rights Act lawsuit dismissed for lack of standing because the candidate failed to establish that he was also an aggrieved voter).

### 2.      Americans with Disabilities Act and Rehabilitation Act.

For purposes of this case, the analysis under these two statutes is essentially identical, and so Defendant treats them together. *See Cal. Council of the Blind v. County of Alameda*, 985 F. Supp. 2d 1229, 1235 n.2 (N.D. Cal. 2013) (same, in the context of voting by blind voters, and explaining the two "material" differences, neither of which are pertinent this case).

To plead a cause of action under Title II of the ADA and § 504 of the Rehabilitation Act, a plaintiff must allege three elements: (1) that he or she is a "qualified individual with a disability"; (2) that he or she was "excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity"; and (3) that "such exclusion, denial of benefits, or discrimination was by reason of his [or her] disability." *Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997).

Here, the complaint identifies three individual Plaintiffs as disabled: Jo A. Laing, Benjamin R. Herrera, and Elizabeth Lawrence. *See* FAC ¶ 49. But as to these voters, the FAC contains no allegations that they were unable to return their "cure" letter in timely fashion due to any disability. In declarations incorporated herein, Ms. Laing admits to receiving her notice, *see* ECF #28-3, p. 20, and Marc Lawrence acknowledges that his mother likewise received hers, *see* ECF #28-2, p. 24, but neither gives any indication that disability made them unable to respond by April 3. Nor is there any such allegation with respect to Mr. Herrera, who, the Registrar's log shows, was sent a cure notice on February 21, 2020. *See* ECF #26-1, p. 36.

More specifically, it appears that alleged "discrimination" is the Registrar's failure to delay certification of the election results to April 21 in light of the COVID

epidemic, *see* FAC ¶ 9. It does not appear that Plaintiffs are challenging the State's generally-applicable cure policies, provided in Cal. Elec. Code § 3019, as insufficient under the ADA or Rehabilitation Act. However, neither the FAC nor the incorporated declarations contain any indication that COVID-19 interacted with these three Plaintiffs' disabilities to require further accommodations. Ms. Laing and Mr. Herrera were sent their cure letters weeks before the election itself and well before the declaration of a state of emergency by the Governor, *see* ECF #26-1, pp. 36 & 44, and Mr. Lawrence's declaration merely states that he was unaware of the deadline for his mother to respond, but gives no indication that he attempted to find out.

### 3. Section 8 of the National Voter Registration Act.

Section 8 of the National Voter Registration ("Motor Voter") Act, 52 U.S.C. § 20507, deals exclusively with voter registration and the procedures for a state to purge its voter rolls of inactive voters. It has nothing whatsoever to do with ballots cast—including vote-by-mail ballots—or any of the other miscellaneous issues raised in Plaintiffs' FAC.

## IV.   **CONCLUSION.**

For the foregoing reasons, the First Amended Complaint should be dismissed without leave to amend.

Respectfully submitted,

Dated: July 21, 2020

NIELSEN MERKSAMER
    PARRINELLO GROSS & LEONI LLP

By:   /s/   Christopher E. Skinnell
    Christopher E. Skinnell

*Attorneys for Defendant*
MELINDA DUBROFF
*San Joaquin County Registrar of Voters*