ALLEN SAWYER CA State Bar No.: 173565
**ROSENFELD & SAWYER**
1107 9th Street, Suite 850
Sacramento, CA 95814
Telephone: 916-447-2070
Facsimile: 916-447-2097
Email: allen@allensawyer.com

CHARLES L. HASTINGS - CA State Bar No.: 88599
NATALI A. RON - CA State Bar No.: 302927
LAW OFFICE OF HASTINGS & RON
4568 Feather River Dr., Ste. A
Stockton, CA 95219
(209) 476-1010
Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORIA

| | |
|---|---|
| CHRISTINA FUGAZI; ALEX GONZALEZ; ANNETTE ZIMMER; FRANCISCO MACIAS; JAMAR C. BERRY; JO A. LAING; BENJAMIN R. HERRERA; DIVINE JANE LEANOS; ELIZABETH LAWRENCE WHITE; MARC LAWRENCE WHITE; KALANI MARSHALL BLACK; TARKDEEP SINGH; TOOBA NAVEED; VALDOMERO LOPEZ; <br>        Plaintiffs <br> v. <br><br> ALEX PADILLA, in his official capacity as Secretary of State for the State of California; MELINDA DUBROFF, in her official capacity as the San Joaquin County Registrar of Voters, and DOES 1 through 50. <br>        Defendants. | CASE NO. 2:20-CV-00970-KJM-AC <br><br> PLAINTIFF'S OPPOSITION TO DEFENDANT MILLER'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; POINTS & AUTHORITIES IN SUPPORT THEREOF. |

**I. Introduction:**

1

Defendant Miller moves for an order dismissing the First Amended Complaint (Fed. R. Civ. P., Rule 12(b)(6).).) This request is based upon the Defendant's claims that;

1) Plaintiffs lack standing to challenge alleged election irregularities from which they did not personally suffer harm;

2) The claims for which Plaintiffs do have standing are moot;

3) The claims contained in the First Amended Complaint ("FAC") fail to state a claim on which relief can be granted.

On the contrary, Plaintiffs seek only to enforce the voting rights of voters who actually filed mail-in ballots and whose mail-in ballots were actually not counted. These are not hypothetical harms. These are voters who were actually, not hypothetically, disenfranchised by the conduct of the Defendants. As will be seen, Plaintiffs do have standing to bring the claims of all these voters.

**II. Jurisdiction:**

**A. Standard of Review:**

Defendant correctly states that the court may, at this stage, determine issues of jurisdiction including standing and mootness, and may consider the entire record of proceedings in doing so.

**B. Defendant argues that Plaintiffs lack standing to bring claims based on hypothetical harms to other voters, who are not parties to this action, that plaintiffs did not suffer themselves:**

Defendant argues that Plaintiffs lack standing to seek redress for harms they themselves were not subjected to. First Defendant argues the Plaintiffs must show standing for each type of injury and form of relief sought. They cite *Friends of the Earth v. Laidlaw Envtl. Servs*. (TOC), 528 U.S. 167, 185 (2000); *see also Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) The cited cases deal with Plaintiffs who seek, and must show standing for, multiple <u>types</u> of relief, i.e., damages <u>and</u> injunction, or injunctive relief <u>and</u> civil penalties.

Here, the First Amended Complaint does seek two types of relief, i.e. declaratory relief and injunction. However, the standing of the Plaintiffs in seeking these two types of relief is the same for each, they have been personally individually denied their fundamental rights.

Defendant argues the named Plaintiffs cannot assert the rights of third parties. Here, Plaintiffs seek redress on behalf of voters other than the named Plaintiffs, whose ballots were not counted when they sent in documents curing defects in their mail-in ballots. As defendant notes, the exception to the rule is that plaintiffs can assert the rights of third parties when 1) "The litigant must have suffered an injury in fact thus giving him or her a sufficiently concrete interest in the outcome of the issue in dispute; [2] the litigant must have a close relation to the third party; and [3] there must exist some hindrance to the third party's ability to protect his or her own interests." (*Powers v. Ohio*, 499 U.S. 400, (1991)).   Allen S

Defendant argues that "Plaintiffs have shown no close relationship with other voters who may have been affected by the asserted irregularities, nor have they demonstrated any inability on the part of those other voters to pursue an action in their own name." That is incorrect.

First, the named Plaintiff, Christina Fugazi, as an affected candidate, has standing to raise and litigate the rights of all the voters who were denied their voting rights. As this Court said in ruling on Kathy Miller's application to be joined or intervene herein:

> "[T]he rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters." Bullock v. Carter, 405 U.S. 134, 143, 92 S. Ct. 849, 31 L. Ed. 2d 92 (1972). Several other circuits have recognized the standing of candidates to represent the rights of their voters. See, e.g., Mancuso v. Taft, 476 F.2d 187, 190 (1st Cir. 1973) ("A candidate for public office [...] is so closely related to and dependent on those who wish to vote for him and his litigation will so vitally affect their rights that courts will relax the rule of practice [...] and will permit a candidate to raise the constitutional rights of voters." (citations omitted).); see also Bay Cty. Democratic Party v. Land, 347 F.Supp.2d 404, 422 (E.D. Mich. 2004) ("Moreover, political parties and candidates have standing to represent the rights of voters.") (citations omitted). (*Fugazi v. Padilla* (May 19, 2020) 2020 U.S. Dist. LEXIS 89020 *.)

Thus, Plaintiff Fugazi, and for that matter Defendant Miller, have standing to litigate the rights of their voters.

Here, of course, the named Plaintiff voters also have standing. 1) They have suffered a concrete injury in fact - denial of their voting rights - 2) the named Plaintiff voters are closely related to the unnamed plaintiffs for purposes of these issues because the unnamed plaintiffs were denied their right to vote in the same way, and 3) there exists a hindrance to the ability of the unnamed plaintiff voters to protect their own right to vote because they do not know their votes were uncounted, and because Plaintiffs do not know the identities of the other voters who were disenfranchised. The named Plaintiff voters are closely related to the unnamed ones in the same way as is the candidate.

Granted, the primary named Plaintiff voters are not closely related to the unnamed voters as family or members of the same association. However, they are closely related for purposes of this lawsuit because the unnamed plaintiffs suffered the same deprivation of their rights and, on their behalf, the named Plaintiffs seek the same remedy. [T]he rights of [unnamed] voters and the rights of [named Plaintiffs] do not lend themselves to neat separation.

Moreover, the named Plaintiffs have standing to raise the issues relating to the Registrar's refusal to count the ballots of unnamed plaintiffs because that refusal denies the named Plaintiffs <u>their own</u> personal rights to a free and fair election. If all the votes are not counted, the election outcome does not accurately reflect the will of the voters - all the voters - including the named Plaintiffs - and their rights are thus denied.

Thus, the named Plaintiffs have standing to raise issues relating to the denial of the unnamed plaintiffs' voting rights because it denies the named Plaintiffs' rights.

As this Court already said:

> Even without a claim that their rights have been violated, the voter plaintiffs have an interest in the accurate administration of the election. Court recognize voters' interest in expressing their choice of candidate without that expression of choice being diluted or distorted by improperly cast votes. See Anderson v. United States, 417 U.S. 211, 226, 94 S. Ct. 2253, 41 L. Ed. 2d 20 (1974) (discussing injury to voters' right against dilution proscribed by federal ballot-stuffing statute) (citing United States v. Saylor, 322 U.S. 385, 386, 64 S. Ct. 1101, 88 L. Ed. 1341 (1944)); see also Prichard v. United States, 181 F.2d 326, 331 (6th Cir. 1950) (discussing right of anti-dilution as "a right or privilege secured to [the voter] by the laws and Constitution of the United States."). Whoever is the eventual winner of the primary election at issue here has an interest in ensuring the result is a

4

legitimate expression of the will of the voters. (*Fugazi v. Padilla* (May 19, 2020) 2020 U.S. Dist. LEXIS 89020 *.)

Defendant further argues that the unnamed voters have not been shown to be actually affected by many of the irregularities. However, the FAC shows, at a minimum, that those voters, as well as the named Plaintiff voters, were not given adequate notice of how <u>and in what time frame</u> they could cure their defective mail-in ballots. Therefore, they too were denied the procedural due process required to protect their right to vote.

Defendant argues against this court's earlier ruling that candidates have standing to raise the constitutional rights of voters, stating "that is not universally true." (See: Motion to Dismiss, p. 16:8-11, et.seq.) However, this Court has ruled that, in this case, candidates do have standing to raise the rights of the voters and that is part of the reason Kathy Miller - a candidate - had to be joined. Thus, that holding is law of the case.

**C. Defendant argues Plaintiffs' Claims Are Moot:**

The arguments that the claims are moot and are not entitled to go forward under the "capable of repetition yet evading review" exception are fully addressed in Plaintiffs' Opposition to Defendant Miller's Motion to Strike First Amended Complaint Pursuant to FRCP 12(f), or in the Alternative for a More Definite Statement Pursuant to FRCP 12(e). Those responsive arguments are incorporated herein by reference.

**III. Facts sufficient to state a claim:**

Defendant also argues Plaintiffs Have Failed to State a Claim on Which Relief Can Be Granted.

**A. Standard of Review:**

Defendant correctly notes that, under Rule 12(b)(6), the factual allegations of the FAC are generally to be accepted as true unless contradicted by matters properly subject to judicial notice or documents incorporated by reference in the complaint. (See: Motion to Dismiss, p. 21-22.)

**B. Violation of Due Process:**

Defendant cites *Soules v. Kauaians for Nukolii Campaign Committee*, 849 F.2d 1176 (1988 9th Cir.), for the proposition that not all election irregularities rise to the level of due process violations and the federal courts should not be "tinkering with the state's election machinery, reviewing petitions, election cards, vote tallies," etc.

The point is well taken. However, this case is not one of garden variety election irregularities. Rather, here, a once-in-a-hundred-years pandemic and its effects on mail-in voting and mail delays coupled with a Registrar's abject failure to give notice (a procedural due process violation) and her wholly arbitrary decision to certify the election earlier than allowed, resulted in a failure to count all the votes. Moreover, it is not an academic exercise. The uncounted votes may very well change the outcome of the election.

As the Court noted in *Montes v. City of Yakima*, 2015 U.S. Dist. LEXIS 194284, at fn 10: "However, even under *Soules*, a court may invalidate an election after taking into account "equitable considerations in fashioning the appropriate remedy," and upon a proper balancing of the "severity of the alleged constitutional infraction" against the "countervailing equitable factors such as the extremely disruptive effect of election invalidation and the havoc it wreaks upon local political continuity." *Id.*; see also *Montana Chamber of Commerce v. Argenbright*, 226 F.3d 1049 (9th Cir. 2000)."

Here, the equities weigh heavily in favor of Plaintiffs. The severity of the constitutional infraction is extreme - denying the candidate and the voters' rights. The countervailing factors are minimal. All Plaintiffs ask is that the court require the registrar to count the uncounted votes. If doing so changes the outcome of the primary, far from wreaking havoc on local politics, it will only require a change in which candidate goes into the runoff election in November.

Nor are the Plaintiffs asking the federal court to micro manage the election, count ballots, verify signatures or count hanging chads. All that is asked is that the court order the local election officials to do their job, i.e - count all the votes. It is difficult to imagine it could take the Registrar more than a half hour to count the uncounted ballots and do the arithmetic. Thus,

far from imposing some onerous duty on the federal courts or the election officials, what Plaintiffs here ask will require minimal effort and almost no expense.

Defendant also argues that there is insufficient evidence that the issues raised, i.e. that the letters sent to voters whose mail-in ballots were deemed defective did not give notice of the time frame within which to cure the defects, that the Registrar failed to provide notice of the deadline on her website, that her office was closed, that voters were ordered to shelter in place, that the drop box told voters <u>not to</u> use it, that the Governor and Secretary of State authorized extending the deadlines due to pandemic related problems with the mails, that the Registrar rushed to certify the election and did not comply with the authorized extensions of deadlines and that the voters could have called the Registrar's office but did not, actually caused the named voters' cure documents to be received too late.

What cannot be denied is that these voters cared enough about curing the defects in their mail-in ballots, to prepare and send in the cure affidavits. So it is fair to say that had they been informed the cure affidavits had to be in the hands of the Registrar by 5 p.m. two days before the extended April 5, 2020 deadline, or if they had been told they had to do so by 5 p.m. two days before the normal deadline for certification, they would have done so. Thus, the real reason the voters were disenfranchised was because the Registrar did not give notice as required by procedural due process and the Registrar elected not to "provide maximum possible notice to voters about how to participate in each of these elections, paying particular attention to the needs of voters at high risk from COVID-19, individuals with disabilities, and other voters with particularized needs." (Executive Order N-34-20. ¶ 3 at 8–9.)

Who more likely to submit mail-in ballots than "voters at high risk from COVID-19, [and] individuals with disabilities." Who more likely to need to cure defects in their mail-in ballots and to do so by mail? Who more likely to need fair notice of the time frame to submit a cure affidavit?

The Registrar simply chose not to extend the deadlines out as far as the Governor's order would have allowed, not to "provide maximum possible notice to voters about how to participate

in each of these elections" and chose to arbitrarily select April 5, 2010, as the date to certify the election. Then she gave notice that cure affidavits must be in by 5 p.m. two days before April 5, 2020, to nobody.

This violates procedural due process. Procedural due process rights are violated by a failure to provide adequate notice of the right to challenge the deprivation of the right as well as the procedures to implement the right, particularly including of the time periods to challenge. (*Brody v. Village of Port Chester* (2d Cir. 2005) 434 F.3d 121 (*Brody*; *People v. Swink* (1984) 150 Cal. App. 3d 1076 [forfeiture reversed where party was denied procedural due process in that the notice she received was not reasonably calculated to inform her of the statutory procedural scheme to obtain a discharge, especially the governing jurisdictional period of limitations.) The courts and law must give "due regard for the practicalities and peculiarities of the case" in determining the reasonableness of the notice given. (*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Harris v. County of Riverside* (9th Cir. 1989) 904 F.2d 497.)

C. Equal Protection:

Defendant argues Plaintiffs have not been denied equal protection. First, the cure affidavits which were received on April 4 or 5, after the 5 p.m. April 3 deadline created by the Registrar's hasty certification, were late, but within the time which should have been allowed under the Governor's emergency order. The cure affidavits of the named Plaintiffs were likewise received between the April 3 deadline and the time allowed by the Governor. Thus, these voters are similarly situated for equal protection purposes. Yet, even when conducting a recount the Registrar counted the former but not the latter. Defendant argues that, "Plaintiffs' cures were not received until almost three weeks after certification was final, and after a recount had been commenced." All the more reason that it would have been no imposition on the Registrar to simply review the cure affidavits, count the votes and thereby protect the purposes of the Governor's emergency order and the voting rights of the affiants. They were counting anyway. Why not count all the votes which were received before the Governor's extended time.

8

Moreover, there were other Counties who, heeding the Governor's admonition, did extend the deadlines for certifying election results and thus for curing defective mail-in ballots, giving "voters at high risk from COVID-19, [and] individuals with disabilities" as well as others who chose mail-in voting the protection of their voting rights which was due. The voters in San Joaquin County who chose to vote by mail are similarly situated with those voters in other Counties who so chose.

CONCLUSION:

For the reasons stated it is respectfully requested that the Court deny Defendant's Motion to Dismiss the First Amended Complaint herein.

Date: August 27, 2020

/s/ Allen Sawyer
Allen Sawyer
Attorney for Plaintiffs